## STATE ex rel. N. A. NELSON v. SAMUEL G. IVERSON.[1]

February 20, 1914.

Nos. 18,585—(312).

**Constitution — payment of money from state treasury.**

Section 9 of article 9 of the state Constitution prohibiting the payment of money out of the state treasury, except in pursuance of an appropriation by law, has no application to the issuance by the state auditor of a warrant

[1] Reported in 145 N. W. 607.

Note. — On the question of the requisites of an appropriation for official salary or expenses, see notes in 16 L.R.A.(N.S.) 631 and 27 L.R.A.(N.S.) 537.

on the state treasury for the distribution of the gross-earnings tax imposed upon and collected from suburban railroad companies, as authorized by chapter 454, Laws 1909.

Upon the relation of N. A. Nelson, the auditor of Washington county, the district court for that county granted its alternative writ of mandamus directed to Samuel G. Iverson, as state auditor of the state of Minnesota, commanding him to draw his warrant upon the state treasurer for the balance of the amount of the gross-earnings tax of the Minneapolis, St. Paul & Suburban Railroad Co. due to the county of Washington and to each of the towns and taxing districts of Grant, Stillwater and Oakdale, and the city of Stillwater, for the years 1909, 1910, 1911 and 1912, or show cause why he had not done so. The respondent moved to quash the writ on the ground that the facts stated in it did not constitute a cause of action and were insufficient to justify the allowance of any writ of mandamus. The matter was heard before Stolberg, J., who made findings denying respondent's motion and directed judgment that a peremptory writ issue. From the judgment entered pursuant to the order for judgment, respondent Iverson appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, and *William J. Stevenson,* Assistant Attorney General, for appellant.

*Reuben G. Thoreen,* County Attorney, for respondent.

BROWN, C. J.

The Minneapolis, St. Paul & Suburban Railroad Co. is subject to the payment of a gross-earnings tax, in lieu of other taxes, as provided for by chapter 454, p. 552, Laws 1909. The tax is paid to the state treasurer and by the statute referred to becomes the property of and is distributed to the municipalities and taxing districts through which the line of railroad extends. The report of gross earnings is made in conformity with the provisions of the general statutes upon the subject (section 1003, et seq., R. L. 1905), and the tax collected by the state treasurer. Chapter 454, supra, provides that the money when so reported and paid shall be by the state tax commission ap-

portioned to the different municipalities as nearly as may be in accordance with the earnings of the company in each. The apportionment is required to be made in triplicate, one copy being filed with the state auditor, one with the state treasurer, and one with the county auditor of the county in which the railroad may be situated. Upon the filing of the apportionment the county auditor is required to report to the state auditor what the per cent of the state tax in each municipality or taxing district through which the road extends is to the entire taxes of such municipality or taxing district. Thereupon the state auditor is required to deduct from the total amount apportioned to each municipality or taxing district the amount due the state as shown by the statement, and that thereupon he "shall draw his warrant upon the state treasury for the balance of the amount of such taxes due to each county and to each of the cities, villages, towns and taxing districts of such county in favor of the treasurer of such county, and shall transmit the same to each county treasurer and shall advise the county auditor of each such county of the payment thereof."

The money is then distributed by the county auditor to the municipal subdivisions entitled to it and in accordance with the apportionment made by the tax commission. The railroad company duly reported its gross earnings for the years 1909, 1910, 1911 and 1912, in compliance with the statute, and paid the tax computed thereon to the state treasurer. The apportionment thereof was duly made by the tax commission, and the amount due to the municipalities of Washington county fixed and determined. The county auditor reported the per cent of the state tax assessed in such municipalities, and thereafter demanded of the state auditor a warrant on the state treasury for the amount of the earnings tax due that county, after deducting the per cent thereof due the state. The state auditor refused to issue the warrant, and this proceeding to compel him to do so was thereafter commenced. The facts are not in dispute and the trial court directed the issuance of a peremptory writ of mandamus for the relief demanded. The state appealed.

It is the contention of the state, and herein is found the basis for the auditor's refusal to issue his warrrant on the treasury for the

amount of the tax apportioned to the municipal divisions of Washington county, that the statute imposing the tax and providing for the apportionment thereof, as heretofore stated, makes no appropriation of money for the payment of the same, and since no other appropriation statute covers the subject, he is without authority to issue the warrant demanded. Reliance for support of the position is placed upon section 9 of article 9, state Constitution, which provides that:

"No money shall ever be paid out of the treasury of this state except in pursuance of an appropriation by law."

And it may be said too that the statutes upon the subject of the authority of the auditor to issue warrants on the state treasury limit his authority in this respect to instances where express appropriations have been made by law.

If the provisions of the Constitution and the general statutes referred to have any application to the situation here presented, and it be held that an express appropriation is necessary to justify the issuance of a warrant on the treasury, and that the particular statute cannot be construed as an appropriation of the money, a position many of the authorities sustain (16 L.R.A.(N.S.) 631), the auditor in his refusal to issue the warrant was right and he cannot, by mandamus or otherwise, be compelled to do so. But our conclusion in the matter, after due consideration, is that neither the Constitution nor the statutes limiting his authority to issue warrants on the treasury, properly construed, have any application to the facts here presented. The statute imposing this tax and providing for its apportionment, construed in the light of the obvious intention of the legislature, does not vest in the state title to the money so raised, and it does not rightfully belong to the general revenue fund of the state. The intention of the legislature was to impose this tax for the joint benefit of the state and the municipal divisions through or into which the railroad extends. Each is thereby vested with an independent right to that part of the tax which shall be apportioned to it by the tax commission. No discretion in respect to apportionment is left to the commission; on the contrary, the statute imposes that as a duty, and the members of the commission have no alternative but to make it in harmony with the spirit and purpose of the law. The

fact that the state treasurer is made collector of the tax and that the same is required to be paid to him, in no essential respect changes the situation or alters or modifies the rights of the municipal divisions entitled to a part of the fund. Until the division thereof is made the state treasurer holds the money as custodian, and for distribution as the statute requires. No specific appropriation of the money by legislative action is necessary to the performance of this act of distribution. The legislature, by the statute imposing this tax, expressly and in so many words requires that it be apportioned and distributed, and any further legislation upon the subject would amount to nothing more, as we view the subject, than a repetition of the purpose already declared. The situation would no doubt be different did the statute justify the conclusion that the tax upon payment becomes the property of the state, and a part of its general revenue fund. But this conclusion does not follow from the language or purpose of the statute, and the protection of the funds of the state does not require that it be so construed. The purpose of the Constitution in prohibiting the payment of money from the state treasury, except upon appropriation made by law, was intended to prevent the expenditure of the people's money without their consent first had and given. State v. Eggers, 16 L.R.A.(N.S.) 631. The reason for the prohibition does not apply to this case, for here the portion of the taxes claimed belongs to the municipal divisions of Washington county, and not to the state. It is probable that the situation requires of the state officers separate accounts of funds received from this and other railroads subject to this form of taxation, but this is a mere matter of bookkeeping, not affecting the legal right conferred by the statute.

Our conclusion therefore is that the constitutional provision referred to does not apply to the statute, and the judgment of the trial court is affirmed.