[No. 2071.  Decided December 26, 1895.]

THE STATE OF WASHINGTON, on the Relation of the Attorney General, Appellant, v. JOHN H. McGRAW et al., MEMBERS OF THE STATE CAPITOL COMMISSION, JOHN E. FROST, Auditor, and O. A. BOWEN, Treasurer of the State of Washington, Respondents.

STATE CAPITOL COMMISSION — POWERS — CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWER — BORROWING MONEY — DISBURSEMENT OF FUNDS WITHOUT APPROPRIATION — STATE WARRANTS.

A statute creating a state capitol commission, and committing to it the business of erecting a capitol building, and investing it with the power to accomplish that object out of the lands granted for that purpose by the government of the United States, is not a delegation of legislative functions, but of administrative only, since the primary object of the statute is to secure the erection at the state capital of a suitable building.

A proposed plan of the state capitol commission, on letting a contract for the erection of a capitol building, to issue the warrants for the amount thereof and exchange them for cash at par, which is to be held by the state treasurer and disbursed upon certificates issued by the commission as the work progresses, does not constitute a borrowing of money within the constitutional inhibition on the subject.

The act of March 20, 1895, (Laws 1895, p. 191) making it unlawful for the state auditor to issue any warrants except upon duly certified vouchers for services rendered or materials furnished, has no application to a plan of the state capitol commission for the issuance by the state auditor of warrants on a special fund known as the "state capitol building fund," to be exchanged at par for cash on the letting of the contract for the construction of the capitol building, as such general provision concerning the discharge of the

auditor's official duties, is manifestly subordinate to the special provisions contained in the acts providing for the construction of the capitol building.

A proposed plan by the state capitol commission for the exchange at par for cash of warrants on the state capitol building fund, required by statute to be used for the purpose of erecting a state capitol building, which cash is to be held by the state treasurer and disbursed for services on such building, is not a violation of art 8, §4, of the constitution, which forbids money to be paid out by the treasurer except in pursuance of an appropriation by law.

Appeal from Superior Court, Thurston County.— Hon. T. M. REED, JR., Judge. Affirmed.

*Harold Preston*, for appellant.

*James A. Haight*, Assistant Attorney General, for respondent.

The opinion of the court was delivered by

GORDON, J.—The question to be determined in this case is the legality of a resolution of the state capitol commission, which resolution is as follows:

"Whereas, It appears to the state capitol commission that said commission can dispose of warrants on the state capitol building fund for the full amount of the unexpended appropriation for said state capitol at par in cash if issued on the letting of the contract for the superstructure of the capitol building, for which bids are or will be invited, and that by so doing the completion of said capitol building wholly and solely from said state capitol building fund, and without resort to any other fund of the state is insured, and the contract price for said letting can be reduced several thousand dollars and said sum saved to the state, and without so doing said contract cannot be let; therefore be it

"Resolved, That on the letting of the contract the commission, with the consent of the contractor, issue to the auditor its certificate or certificates directing the auditor to issue warrants on the state capitol building fund, payable to the order of the contractor, to be

indorsed by the contractor and to be delivered as so indorsed by the auditor in exchange for cash at not less than par, said certificate or certificates and warrants to be for a sum or sums not exceeding the amount of the appropriation still unexpended; said moneys realized by the commission from said warrants to be held by the state treasurer solely to be disbursed upon certificates issued by the board upon and with vouchers duly presented, passed upon, examined, audited and allowed in the method provided in § 14 of ch. 138, Laws of 1893, certifying that services have been rendered and material furnished and that the person therein named is entitled to be paid the amount therein named, said certificates to be audited and allowed by the state auditor."

Upon behalf of the relator it is contended that the plan proposed by said resolution involves the borrowing of money, and that no authority exists in the commission or in the auditor of the state for that purpose; that the acts contemplated by said resolution are not within the powers conferred by law upon said capitol commission and the several officers of the state made respondents herein, that it would be a breach of the official duty of the state auditor to issue warrants contemplated by said resolution in advance of the performance of labor and the furnishing of material by the contractor, and that it would be a breach of duty for the state treasurer to pay out the funds received from the sale of said proposed warrants upon the certificates proposed by said resolution; that the proposed plan contemplates the violation of the constitutional provision forbidding the disbursement of money from any fund after the lapse of two years from May 1st following the date of the appropriation. Chief of these objections and the one most strongly relied upon by counsel is the first above mentioned, viz., that the

borrowing of money is of the essence of the proposed plan.

The act of congress approved February 22, 1889, commonly known as the Enabling Act, in substance granted to the state 132,000 acres of the unappropri-ated public lands therein "for the purpose of erecting buildings at the capitol of said state for legislative, judicial and executive purposes." Section 1 of the act of the legislature of this state approved March 21, 1893, provides:

"*That for the purpose of erecting and completing a state capitol building* for the state of Washington on the site now owned and occupied by the state of Washington for the purpose at the city of Olympia in said state, *there is hereby created a board to be known as the state capitol commission* . . .*"

Section 5 of said act is as follows:

"It shall be the duty of said board (1) To locate said capitol building at the place in the present capitol grounds most sightly and suitable therefor. (2) To secure the submission of plans and designs appropri-ate to a capitol building of the State of Washington, the reasonable cost of which shall be one million dol-lars and no more, and from such plans and designs as may be worthy and adequate, to secure the selection of the most desirable plan and design, and to obtain proper architectural designs, plans and specifications and details in conformity with such plan and design. (3) To secure the erection and completion of said capitol building conforming faithfully to such plan and design."

Sections 14 and 15 of the same act read:

"Sec. 14. All disbursements on account of the construction of the capitol building shall be made pursuant to certificates issued by the board. All claims, bills and demands for labor performed, work done or material furnished shall be presented to the board in duplicate, and shall be passed upon

by said board only at regular sessions thereof, and after a careful examination of every item named. If found correct they shall audit the same, preserving one duplicate and transmitting the other as audited and allowed to the state auditor, and shall issue a certificate to the effect that services have been rendered or material furnished, and the person therein named is entitled to a warrant on the treasury for the amount therein named. Upon the presentation of said certificate and a duplicate of the vouchers therefor as audited and approved by the board as herein provided, to the state auditor, he shall draw his warrant on the state treasury on the state capitol building fund for the amount stated, and to the order of the person named in said certificate: *Provided,* That no certificate shall be issued in excess of the amount appropriated for that year. All certificates issued shall be recorded in a book kept for that purpose.

" Sec. 15. In order to carry out the provisions of this act there is hereby created a fund to be known as the [state] capitol building fund, into which fund shall be paid the proceeds of all moneys derived from the sales of lands granted to the State of Washington for the purpose of erecting public buildings at the state capital, from which fund there is hereby appropriated the sum of two hundred and twenty-five thousand dollars for the fiscal year ending March 31, 1894, and two hundred and seventy-five thousand dollars for the fiscal year ending March 31, 1895: *Provided,* That no appropriation shall be made from any fund except the fund derived from the sale of lands granted for erecting public buildings at the state capital."

Section 17 of the same act recites that:

" *The state having no sustable building for capitol purposes,* and a long interval necessarily elapsing after this act goes into effect before the work of construction on the capitol building can be begun, *an emergency is hereby declared to exist.   . . .*"

Section 15 above quoted was further amended by

the act approved March 13, 1895 (Laws, p. 104), as follows.

"Sec. 1. That § 15 of ch. 138 of the Laws of Washington of the session of 1893, be amended to read as follows: Sec. 15. In order to carry out the provisions of this act there is hereby created a fund to be known as the state capitol building fund, into which fund shall be paid the proceeds of all money derived from the sales of lands granted to the State of Washington for the purpose of erecting public buildings at the state capital, from which fund there is hereby appropriated the sum of nine hundred and thirty thousand dollars: *Provided*, That no appropriation shall be made from any fund except the fund derived from the sale of lands granted for erecting public buildings at the state capital: *Provided further*, That any future contract shall be for the completion of the building according to the plans and specifications, adopted by the capitol building commission, and shall be paid for in warrants on said state capitol building fund."

"In interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the the whole statute (or statutes on the same subject) and *the objects and policy of the law*, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the legislature." *Brown v. Duchesne*, 19 How. 183.

We must presume that the legislature by the acts so passed intended to secure the building and completion of a capitol building from the proceeds of sales of the lands so granted by congress, without resort to other funds. We are also bound to presume that the commission which it authorized thereto is in good faith endeavoring to effectuate the object and purpose of the legislature. We think a reference to the acts of 1893 and 1895, and particularly to §§ 1 and 17 of the act of 1893 above quoted is sufficient to indicate that

the "object of the law" was to secure the erection at the state capital of a suitable building "for legislative, judicial and executive purposes" out of the lands granted for that purpose to the state by the general government, without burdening the treasury of the state, and that the "policy of the law" was to intrust to the commission provided by said act discretionary power to determine, subject only to the limitations and restrictions imposed by said act, the best means to accomplish that object. What are these limitations? First, that the cost of said building should not exceed one million dollars: second, that no portion of such cost should be borne by any fund excepting "the fund derived from the sale of lands granted for erecting public buildings at the state capital;" and thirdly, that said building "shall be completed by the 1st day of January, 1899." Such being the "object and policy of the law," as indicated in its various provisions the method of procedure is subordinate and secondary thereto, and in so far as such procedure is not inconsistent with the main object and policy, nor in conflict with express mandatory provisions of the act, the precise method of its adoption and exercise must be left to the determination of the commission charged with the duty of effectuating the legislative will.

In *Platt v. Union Pacific Railroad Co.*, 99 U. S. 48, the supreme court of the United States had under consideration the act of congress approved July 1, 1862, granting lands to said railroad company "for the purpose of aiding in the construction of the railroad and telegraph line," etc. It was provided in the third section of said act that all lands not sold or disposed of before the expiration of three years after the completion of the road should be subject to settlement and pre-emption like other lands. Thereafter the company

accepted the grant, located its line of road and filed its map within the requisite time. Thereafter, in order to raise the funds necessary to build and complete its line of road, it issued its bonds, and to secure said bonds executed a mortgage upon said granted lands. The court held that the mortgage executed by the company for the purpose of raising money necessary to continue and complete the construction of the road *disposed* of said lands within the meaning of the act, and was authorized thereby; also, that the provisions of the act should be construed so as to effect their primary object, which was to furnish aid in and during the construction of the road, and that it could not be defeated nor controlled by the secondary and subordinate purpose of opening to settlement and preemption such of the lands as should not be sold or disposed of within the designated period. At page 64 the court say:

"The principal objection urged against the interpretation we have given to the words 'sold or disposed of' is, that it is repugnant to the governmental policy. . . . It must be admitted that congress had that policy in view. . . . *But this policy was manifestly subordinated to the higher object of having the road constructed, and constructed with the aid of the land grant."* . . .

"If, as we think it manifest, the leading primary policy of the act was to place the lands in the hands of the company, to be used for the completion of the road, as this work progressed, *any secondary policy the government may also have had in view ought not to be allowed to embarrass or defeat that which is primary.* . . .

"And we are to give such construction to that language as will carry out the congressional intention."

We cannot agree with the contention of counsel that the proposed plan of the commission, as expressed in the resolution, constitutes a borrowing of money, but

we think that it falls within the principle involved in the cases decided by this court of *Cloud v. Lawrence*, 12 Wash. 163 (40 Pac. 741), and *Winston v. Spokane*, 12 Wash. 524 (41 Pac. 888), and is in furtherance of the objects and policy of the law creating such commission. It was entirely competent for the legislature to commit to a board of commissioners the business of erecting the building, and to invest such board with the power necessary to accomplish the object for which it was created; and this does not constitute a delegation of legislative functions, but the authority conferred and the duty imposed are administrative. *Nelson v. Troy*, 11 Wash. 435 (39 Pac. 976).

Such board is neither a corporation nor a public *quasi* corporation, but is merely the ministerial disbursing agent of the state for that purpose, and upon the completion of its duties ceases to exist.

The proposed plan involves merely an exchange of warrants (drawn upon the fund from which the capitol building must be built), at par for cash, *on the letting of the contract*, and is not antagonistic to any provision of law upon the subject, nor does it conflict with the language contained in § 1 of the act of March 13, 1895, "That any future contract shall be for the completion of the building according to plans and specifications, adopted by the capitol building commission, and *shall be paid for in warrants on said state capitol building fund.*" *Cloud v. Lawrence, supra; Winston v. Spokane, supra; In re State Warrants*, 62 N. W. 101.

Nor do we think that the acts which it is alleged that the auditor threatens to and will perform would constitute any breach of duty by him or constitute any violation of the law pertaining to his office. In so far as the acts in question and the proceedings of

said board of capitol commission thereunder, involve a discharge of duty by the respondents, the state auditor and the state treasurer, they are special to that subject and are not affected by prior or subsequent general provisions of statute concerning the discharge of their official duties. It is a well settled proposition that a general law does not abrogate a special one by mere implication. *Brown v. Commissioners*, 21 Pa. St. 37; *State v. Judge of St. Louis Probate Court*, 38 Mo. 529.

" Having already given its attention to the particular subject, and provided for it, the legislature is reasonably presumed not to intend to alter that special provision by a subsequent general enactment, unless that intention is manifested in explicit language. . . . (The fact that the general act contains a clause repealing the acts inconsistent with it does not diminish the force of this rule of construction)." Endlich, Interpretation of Statutes, § 223, and authorities there cited.

In accordance with this general rule we think it is very clear that the provisions of the act of March 20, 1895, (Laws 1895, p. 191) do not apply to the case. The resolution in question accords with the spirit of § 14 of the act of 1893 and contains all of the safeguards imposed by that section. In addition thereto we think that the provisions of that section are merely directory and indicate a method by which any party entitled to a warrant could, upon complying with its provisions, compel the issuance of such warrant, but, however that may be, it is very clear that these provisions relate at most merely to matters of policy which, within the principle decided by the supreme court of the United States in *Platt v. Union Pacific Railroad Co., supra*, is manifestly subordinate to the higher object of having the building completed from

the fund arising from the sale of lands granted by
congress for that purpose. We think further that it
will be the duty of the treasurer to disburse the money
received in accordance with the terms so proposed,
and that such plan is not in conflict with any provis-
ion of the laws or the constitution of this state, relat-
ing to the subject; he becomes the proper custodian of
the moneys so received by virtue of § 105, Gen. Stat.,
which makes it his duty to "receive and keep all
moneys of the state not expressly required by law to
be received and kept by some other person;" and he
becomes charged with the trust of disbursing them in
accordance with the terms upon which they are re-
ceived by him. In this respect the disposition of such
funds may be likened to that imposed by the law gov-
erning the revolving fund (Gen. Stat., § 1173); also
to the provisions of the law relating to indigent
patients at the hospital for the insane (§ 1263, Gen.
Stat.); and of ch. 68, Laws of 1895, p. 122, providing
for the apportionment of the school fund of the state.
Nor do the moneys so received fall within the provis-
ion of the constitution forbidding moneys to be paid
out by the treasurer "except in pursuance of an ap-
propriation by law; nor unless its payment be made
within two years from the first day of May next after
the passage of such appropriation act," since these
moneys are charged with a special trust as above
noticed and "must be disbursed in accordance with
the terms of the trust."

For these reasons we think that the acts complained
of do not constitute any violation of law or of duty
imposed upon the several respondents in the premises,
and that the resolution of the state capitol commission
is in accord with the objects and policy sought to be

attained by the several legislative enactments relating
to the subject of the building a state capitol and is
authorized and warranted by law.  In thus disposing
of the case, we give full force to the various provisions
of the constitution relating to the different officers of
the state who are made respondents in this proceed-
ing, but it may well be doubted whether the limita-
tions of the constitution are at all applicable to the
subject which we are here considering, inasmuch as
the whole subject matter of this case relates to the do-
nation from the congress of the United States of lands
for the purpose of erecting a suitable building at the
capital of the state.  For such purpose, and only for
such purpose, were the lands granted.  It would be
beyond the power of the legislature to use an acre of
said lands for any other purpose or to appropriate a
dollar of the funds arising from their sale to the ac-
complishment of any other object.  It would have
been entirely competent for congress, the donor, to
have particularly designated the manner in which the
land should be sold and their proceeds applied; in-
stead, however, of so doing, it has left their disposi-
tion to the control of the legislature of the state.  It
would seem to follow that the legislature might
properly deal with the subject as to it might seem
most beneficial without regard to any limitations im-
posed by the different provisions of the constitution
of the state.  To illustrate, suppose that congress had
provided that the moneys arising from the sale of
such lands should be drawn from the treasury of the
state upon the written order of the *secretary* of the
*state capitol commission,* would any one contend that
the provisions of § 4, art. 8 of the constitution, *supra,*
rather than the act of congress making the grant,
would control?  Inasmuch, however, as this proposi-

tion was not argued upon the hearing, we have not considered it in the decision of the case, and prefer to rest the decision upon the views above outlined rather than upon this latter suggestion.

The judgment will be affirmed.

HOYT, C. J., and SCOTT, DUNBAR and ANDERS, JJ., concur.