[No. 14892.  Department Two.  August 3, 1918.]

THE STATE OF WASHINGTON, *on the Relation of W. W. Sherman, State Treasurer, Plaintiff,* v. F. E. PAPE, *State Forester and Fire Warden, Respondent.*[1]

STATES—FUNDS — COLLECTIONS FOR FIRE PROTECTION — CONSTITU-
TIONAL AND STATUTORY PROVISIONS.  Sums paid or contracted to be
paid by the state forester for fire protection, and, by Laws 1917, p.
349, to be made a lien upon the property protected and extended on
the tax rolls and upon collection by county officials to be "repaid"
to the state forester to be applied to the expenses incurred unless
he is "reimbursed by the owner," are not "state" funds or taxes
levied or collected for state purposes to be paid into the state treas-
ury and paid out only on appropriations by the legislature, within
the provisions of Const., art. 7, § 6, art. 8, § 4, or art. 11, § 15; since
the act was within the police power, without the necessity of making
the funds state funds, and they were not taxes levied for state pur-
poses, but assessments laid on private lands particularly for the
benefit done thereto.

Application filed in the supreme court June 19, 1918, for a writ of mandate, to compel payment of funds into the state treasury.  Denied.

*The Attorney General* and *Glenn J. Fairbrook, Assistant,* for relator.

*Palmer & Askren* and *E. C. Million,* for respondent.

HOLCOMB, J.—This is an original application for mandate to compel the respondent to pay into the state treasury funds aggregating $6,987.63, assessed and

[1]Reported in 174 Pac. 468.

charged by the respondent against private forest land-owners for fire protection during the year 1917.

It is alleged that, pursuant to ch. 105, Laws of 1917, p. 349, § 2, during the year 1917, respondent contracted with divers persons for the patrolling and protection from fire of certain forest property subject to protection in the manner provided in the act, and thereafter received from the owners of such property, and from the treasurers of the counties to which such sums had been reported by the respondent and upon the tax rolls of which such amounts had been extended by the county assessors pursuant to law, the sum so stated; that respondent had refused and still refuses to pay the moneys into the treasury of the state of Washington and threatens to, and will, unless compelled by the court to pay the moneys into the treasury of the state, apply the same in payment of the sums due upon contract for patrolling and fire protection.

Section 2 of the act above mentioned reads:

"Any amounts paid or contracted to be paid by the state forester for this purpose [fire protection] shall be a lien upon the property patrolled and protected and, unless reimbursed by the owner . . . shall be reported by the state forester to the county assessors of the county or counties in which the property is situated who shall extend the amounts upon the tax rolls. The procedure provided by law for the collection of taxes and delinquent taxes shall be applicable thereto, and upon collection thereof the county officials shall repay said amounts to the state forester to be applied to the expenses incurred in carrying out the provisions of this section."

The theory of the relator, supported by the *Attorney General,* is that chapter 105, Laws 1917, p. 349, relating to the funds in question and the duties of the state forester and fire warden, provides no method of accounting under which the state forester shall administer the

funds; that he is not directed to make any disbursements, and that he is not required to give any bond to assure his faithful administration of the fund; that, in fact, no law of the state relating to the state forester required him to give any sort of bond. It is, therefore, contended that these provisions do not create a trust fund which may be retained by the state forester without being deposited in the state treasury and paid out at his own instance without an appropriation, but that the moneys so remitted to him must be deposited in the state treasury and not disbursed except in pursuance of an appropriation by the legislature. They cite the following provisions of the state constitution as controlling:

"All taxes levied and collected for state purposes shall be paid in money only into the state treasury." Const., art. 7, § 6.

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum." Const., art. 8, § 4.

"All moneys, assessments, and taxes belonging to or collected for the use of any county, city, town or other public or municipal corporation, coming into the hands of any officer thereof, shall immediately be deposited with the treasurer, or other legal depositary, to the credit of such city, town, or other corporation respectively, for the benefit of the funds to which they belong." Const., art. 11, § 15.

Relator, therefore, argues that it is the manifest intention of the constitutional provisions that all moneys

collected by the state for any purpose are required to be paid into the state treasury, and disbursed only in pursuance of an appropriation by the legislature, although moneys collected under some particular statute may not be what could technically be called funds belonging to the state. The relator lays stress upon the fact that § 2 of the act uses the word "reimburse" in referring to the amount incurred for protection of particular owners of property, and uses the word "repay" in speaking of the amounts collected by the assessors. He therefore urges that these provisions indicate that the intent of the act was that the legislature should make an appropriation of the amounts to be so collected to the expenses incurred by. making a blanket appropriation in the appropriation bill rather than expressing any intent that the amounts should constitute a trust fund. The theory of the relator is based upon the premise that the funds provided for in this act are state or public funds, and therefore controlled by the constitutional provisions relating to the deposits and appropriation thereof. If the premise is incorrect, the deductions necessarily fall.

In *State ex rel. Johnson v. Clausen*, 51 Wash. 548, 99 Pac. 743, we had under consideration the question of whether moneys received by the treasurer of the board of regents of the State College of Washington, from students' fees and rents and sources other than the general and state governments, were to be considered as part of the "state finances" and to be paid over by the treasurer of the board of regents to the state treasurer, within the meaning of an act of 1907, Laws 1907, p. 179, entitled: "An act relative to the finances of the state," etc., providing that each state officer or other person authorized to collect moneys belonging to the state, or any institution thereof, shall each day transmit all moneys to the state treasurer.

It was there held that moneys so received were not "state finances" under the act in question, although the State College of Washington was a state institution. The constitutional provisions relied on in this case were not discussed in that case and apparently not raised. If, however, the premise on which relator relies in this case, namely, that the funds in question are public funds or state funds or state finances, however they may be defined, is the same as in that case, the result must be the same.

It is of no concern to us that the legislature provided for a system of fire control which provides for raising funds and the administration thereof by a state officer without any system of accounting, or such system of checks and balances as seems to be the policy of the law in regard to all officers handling public funds. They are, under the provisions of the act, to be obtained from forest landowners to protect against fires, and forest landowners under the act are given the privilege of protecting their own lands and of forming cooperative protective agencies to protect their lands from fire; and if they fail so to protect their lands adequately, the state forester is required to provide such protection at a cost of not to exceed five cents per acre per annum. Any amounts paid or contracted to be paid by the state forester for this purpose shall be a lien upon the property patrolled and protected and, unless reimbursed by the owner within ten days after October first of the year in which they were incurred, on which date the state forester shall be prepared to make statement thereof upon request to any forest owner whose own protection has not been previously approved by him as adequate, shall be reported by the state forester to the county assessors of the county or counties in which the property is situated, who shall extend the amounts upon the tax rolls covering such property, and the

amounts shall be collected at the time and in the same manner that the next taxes on the same property are collected. These disbursements so made by the state forester are made for and on behalf of the private forest landowners, for their special benefit as well as incidentally for the general benefit of the whole public. The disbursements are required to be laid, if not paid, upon the lands benefited, and collected by the taxing officers. But this arrangement does not necessarily make the assessment taxation, or the funds when collected public funds.

Protection against fire in the forests of Western Washington is imperative, and it is within the police power of the state to provide for the imposition of the cost of such protection against the private forest lands so affected. We held in *Wedemeyer v. Crouch*, 68 Wash. 14, 122 Pac. 366, 43 L. R. A. (N. S.) 1090, and in *Northern Pac. R. Co. v. Adams County*, 78 Wash. 53, 138 Pac. 307, 51 L. R. A. (N. S.) 274, that laws providing for the destruction of noxious weeds upon private lands and public highways were constitutional as within the police power of the state, and that the assessment of the costs of the destruction thereof against private lands was valid.

In the exercise of its police power the state undoubtedly could have made all funds its own, to be dealt with as state funds contemplated by the constitution; but it was not necessary so to do. The legislative wisdom could in its discretion provide for the collection and administration of the funds without making them state or public funds. This the legislature by this act undoubtedly did, and it is not our business to question its wisdom. These funds were not taxes levied and collected for state purposes generally, but were assessments laid upon private lands particularly for the

benefits done those private lands. It was not necessary, therefore, that the sums imposed and collected should come into the state treasury as provided by art. 7, § 6.

Section 4, art. 8, of the constitution, is almost identical with similar provisions in other state constitutions which have been examined, and as to one such the supreme court of Pennsylvania, in *Commonwealth v. Powell*, 249 Pa. 144, 94 Atl. 746, said that that provision of its constitution "simply means that the public funds are not to be expended in any way, except as directed by the law-making power." The supreme court of Minnesota, in *State ex rel. Nelson v. Iverson*, 125 Minn. 67, 145 N. W. 607, held that a provision of the constitution of that state prohibiting the payment of money out of the state treasury except in pursuance of an appropriation by law has no application to the issuance by the state auditor of a warrant on the state treasurer for the distribution of the gross earnings taxes imposed upon and collected from suburban railroad companies as authorized by an act of the legislature, because the funds so raised did not vest in the state the title to the money so raised and did not properly belong to the general revenue fund of the state. See, also, *State ex rel. Linde v. Taylor*, 33 N. D. 76, 156 N. W. 561, Ann. Cas. 1918A 583, L. R. A. 1918B 156; *Ex parte Lucas*, 160 Mo. 218, 61 S. W. 218; *State ex rel. Spencer Lens Co. v. Searle*, 77 Neb. 155, 108 N. W. 1119, 109 N. W. 770; *State ex rel. Armington v. Wright*, 17 Mont. 565, 44 Pac. 89.

We are firmly convinced that, under the act in question, the state forester is but an agent designated by the law to carry out the legislative will. It was the manifest intent of the legislature to provide for adequate protection of the forest lands from fire against

the negligence or wilfulness of any forest landowner, and to compel the reimbursement of such cost, to the limit specified, by the person so protected. In doing so, the method was devised of collecting the moneys expended in such protection by customary and certain means. It was intended, of course, that the state should lose nothing and at the same time that funds should be readily at hand for the purpose desired. Or, if it should be required to define the sums disbursed by the state forester as moneys appropriated, as was said in *State ex rel. Johnson v. Clausen, supra:*

"A reading of this act in connection with the then existing laws heretofore quoted makes it apparent that the legislature did not intend by this general language to reach out and include the fund in controversy."

And in *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, as to the constitutional provision regarding the manner of making an appropriation by the legislature, it was held:

" 'It is sufficient if the legislative intent to make an appropriation clearly appears, expressly or by implication, from the terms of the statute.' 36 Cyc. 892. . . . 'No arbitrary form of expression is dictated by the constitution, and none should be required.' . . . 'There may be an appropriation of public moneys to a given purpose without in any manner designating the act as an appropriation.' "

So it could with ample support be held that the legislative act under consideration appropriated in advance the moneys which were to be reimbursed from the forest landowners.

We, therefore, find nothing in the act in question violative of any of the constitutional provisions invoked, and conclude that the relator is not entitled to have the funds paid over into the state treasury to be paid out only by legislative appropriation further than has

been heretofore made. The policy of the administration thereof is for the legislature to determine.

Writ denied.

MAIN, C. J., CHADWICK,. MACKINTOSH, and MITCHELL, JJ., concur.