[No. 15597.   Department One.   November 21, 1919.]

THE STATE OF WASHINGTON, *on the Relation of L. L. Thompson, Attorney General, Plaintiff,* v. JOHN H. POWELL *et al., as Members of the Veterans' Welfare Commission, Respondents.*[1]

STATES (23-1)—FISCAL MANAGEMENT—COLLECTION AND CUSTODY OF FUNDS. Neither Rem. Code, § 5029, requiring state officers authorized to collect or receive state moneys to make daily deposits of the money collected, nor other statutes defining the duties of the state auditor and treasurer, has any application to moneys received by the Veterans' Welfare Commission, created by Laws 1919, p. 33, for the purpose of aiding veterans of the late war and which appropriated $500,000 for such aid, but the act authorizes the commission to make loans and use the funds and repayments in their discretion for the benefit of soldiers and sailors.

Application filed in the supreme court October 6, 1919, for a writ of mandamus directing the Veterans' Welfare Commission to remit certain funds to the state treasurer.   Denied.

*The Attorney General* and *Roscoe R. Fullerton,* for relator.

*John H. Powell,* for respondents.

MAIN, J.—This is an original application in this court for a writ of mandamus.   The relator is the *Attorney General* of the state.   The respondents are the members of the Veterans' Welfare Commission, created at the legislative session for the year 1919 (Laws of 1919, ch. 9, p. 33).

Section 1 of this act creates what is known as the Veterans' Welfare Commission, to consist of five members, who shall be appointed by the governor.   The section further provides that the commission may ex-

[1]Reported in 185 Pac. 573.

pend the funds appropriated by the act "as they may deem necessary for such purposes."

Section 2 of the act defines the power of the commission and, among other things, authorizes it to disburse the funds appropriated by the act for the welfare of "veterans and the soldiers, sailors and marines of the United States in the war with Germany." This section also provides that the commission may disburse the funds appropriated for its use in such manner and for such purposes as "in its judgment will best facilitate and promote the return of such veterans, soldiers, sailors and marines to civil life"; and concludes with the provision that the commission may "make grants or loans, or expend such funds in any manner for such persons, and the enumeration of specific purposes shall not be construed to exclude other purposes but the manner in which such funds shall be expended shall be entirely in the discretion of the commission."

Section 4 of the act provides that the records of the commission shall be audited by the bureau of inspection and supervision of public offices.

Section 5 provides that, for carrying out the purpose of the act, there is appropriated the sum of $500,000.

After the act became effective, the respondents were appointed by the governor as members of the commission and entered upon their duties as such. In the carrying out of the provisions of the act, the commission, from time to time, made loans in small amounts and for a short time to various persons coming within the act, to relieve an immediate necessity. In many cases these loans have been repaid to the commission. The amount of money thus disbursed and repaid to the commission aggregates the sum of $1,425.14. The relator's position is that this money, having been once loaned by the commission and repaid to it, should be

returned to the state treasury. The respondents' position is that they have a right to retain the money and use it for the purposes specified in the act. In support of his position, the relator first relies upon Rem. Code, § 5029, which requires each state officer authorized by law to collect or receive moneys belonging to the state to transmit to the state treasurer all moneys collected by him on the preceding day.

In the Veterans' Welfare Commission act there is no limitation upon the powers of the commission in expending the appropriation, other than it shall be expended for the benefit of soldiers and sailors. It is clear from the provisions of the act that it was not the intention of the legislature to provide for a department. of the state government for the collection of revenues of the state. The work of the commission is not a part of the state's fiscal system. The act relied upon by the relator was passed for the purpose of limiting the powers of such officers, bureaus and departments as were created for the purpose of collecting· the state's revenue from various sources. The Veterans' Welfare Commission was created for the purpose of spending a portion of the state's revenue, and the legislature was careful to fix no limitation upon the powers of the commission in that respect.

The concluding language of § 2 is that the funds shall be expended entirely "in the discretion of the commission." The other general statutes relied upon by the relator defining the duties of the state treasurer and the state auditor are likewise inapplicable to the present case. To give the act the construction contended for by the relator would tend to limit the object and purposes for which the act was passed. The construction contended for by the respondents would tend to facilitate the accomplishment of those objects and purposes. The commission may loan to a soldier the

sum of $10 for ten days. The soldier repays that amount. Under the construction of the relator, a portion of the appropriation represented by this $10 is no longer available for the work of the commission. It has performed all the service that it can perform, and must be returned to the state treasurer, where it would remain until such time as the legislature might re-appropriate it. If this be true in regard to $10, it would also be true in regard to any sum loaned and repaid. If the money loaned by the commission must be retired when it is repaid to it, the fund might be thus depleted before the work of the commission was accomplished. This construction is not in harmony with the language used in the act, nor with its objects and purposes. There is no reason why money which has been loaned by the commission and returned to it should not again be used for other persons covered by the act, in any manner the commission sees fit.

The writ will be denied.

HOLCOMB, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.