[No. 22925. *En Banc.* February 11, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Arthur W. Davis et al., Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

[1]Reported in 295 Pac. 751.

*Davis, Heil & Davis,* for relators.

*The Attorney General* and *E. W. Anderson, Assistant,* for respondent.

BEALS, J.—Relators, the regents of the state college of Washington, filed in this court their original petition for a peremptory writ of mandamus directed to the respondent, as state auditor, requiring him to issue, in connection with expenses incurred on behalf of the state college of Washington, five warrants, drawn on the state treasurer as follows: One on the Morrill fund; one on the Hatch fund; one on the Smith-Lever fund; and two on the college fund of the state college of Washington. An alternative writ was issued, in response to which the respondent appeared and demurred to the petition and the alternative writ, upon the ground that the same failed to state facts sufficient to constitute a cause of action, or to entitle plaintiffs to any relief, by way of mandamus or otherwise. There being no dispute as to the facts, the matter

is before us for final determination upon relators' petition and respondent's demurrer thereto.

Four different funds are involved in this litigation. The first three are Federal aid funds, derived from land or other grants by the Federal government; the last two items involve the so-called college fund, which is an administrative fund, made up of receipts from fifty or so sources, including class room fees, dormitory rental, summer school tuition, and money derived from the sale of live stock, dairy products, etc. Respondent bases his refusal to draw the warrants above referred to, upon the ground that there are no legislative appropriations covering the same, and that, for this reason, no lawful authority exists which justifies him in issuing the warrants.

We shall, in the first instance, discuss the college fund, which is not a fund created by statute, but one established, because of the necessities of the case, to take care of receipts accruing from the sources hereinabove referred to. Similar revenues were considered by this court in the case of *State ex rel. Johnson v. Clausen,* 51 Wash. 548, 99 Pac. 743, in which it was held that money so received did not constitute finances of the state, or of a department or institution thereof, within the meaning of chapter 96, Laws of 1907, p. 179, Rem. Comp. Stat., § 5501, requiring such moneys to be daily transmitted to the state treasurer. The matter of the disbursement of the money without any legislative appropriation was not referred to in the opinion, and, this matter having been called to the court's attention by a petition for rehearing, it was determined that that phase of the inquiry had become moot, because the state legislature, at its 1909 session, by an act passed immediately after the case was decided, had made a specific appropriation covering the

money involved. *State ex rel. Johnson v. Clausen,* 51 Wash. 689, 101 Pac. 835.

From the court's opinion, it seems clear that, had this matter been specifically decided, the court would have held that no legislative appropriation was necessary in order to disburse the fund, in view of the fact that the court held that the money in the fund was not included within the "state finances," but comprised a special fund to be administered by the regents of the state college. The legislative appropriation of 1909, referred to in the order of this court entered on the petition for rehearing above mentioned, was of that portion of the fund which had been, as held by this court, erroneously deposited with the state treasurer, and authorized its repayment to the state college. The legislature, at its 1909 special session, enacted chapter 9, Laws of 1909 Ex. Ses., p. 36 (Rem. Comp. Stat., § 5527), which reads as follows:

"The state treasurer shall hereafter constitute and be the treasurer of all funds belonging to the State College, Experiment Station and School of Science of the state of Washington, known as the State College of Washington. All moneys or funds received from the United States or from any other source whatsoever for the benefit of said State College or from the products or property of said college, or for the use of or belonging to said college shall be paid to and deposited with the state treasurer; when so deposited the same shall be held as special funds for said college, and are hereby appropriated to the uses and purposes for which the same are received. Upon receipt of any funds belonging to said college by the state treasurer, he shall issue duplicate receipts therefor and deposit one of such receipts with the state auditor, who shall keep the accounts of said college as other accounts are kept, and shall draw warrants against said accounts upon the presentation of properly executed vouchers therefor, but no warrant shall be drawn on any such

fund for an amount in excess of the amount remaining in such fund.''

Since the enactment of this law, which, it seems reasonable to suppose, was passed by the state legislature in view of the opinion of this court in the case of *State ex rel. Johnson v. Clausen, supra,* all moneys accruing from any of the sources referred to in the act, have been paid to the state treasurer, and by him allocated to an appropriate fund, bearing a descriptive designation. These funds have been disbursed on order of the regents of the college, the legislature having made no specific biennial appropriation of the same, evidently upon the theory that § 5527, *supra,* because of the provision thereof that ''when so deposited the same shall be held as special funds for said colleges, and are hereby appropriated to the uses and purposes for which the same are received,'' either rendered any legislative appropriation unnecessary, or constituted a standing or continuing appropriation of the moneys accruing to the respective funds.

Relators contend, *inter alia,* that the four funds with which we are here concerned, being expressly designated by § 5527 as special funds for the state college, should be subject to the order of the board of regents, and do not require legislative appropriation.

Section 4, art. 8, of the state constitution, as originally adopted, and as it remained until amended by vote of the people in November, 1922, read as follows:

''No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the

sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.''

This section, as above stated, was amended in 1922 to read as follows:

''No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum.'' Art. 8, § 4, amend. 11.

As far as the questions with which we are here concerned are affected by the foregoing section of the state constitution, the changes in the law effected by the amendment are not material.

The foregoing provision of the constitution was first considered by this court in the case of *State ex rel. Attorney General v. McGraw*, 13 Wash. 311, 43 Pac. 176, which arose out of the proposal to exchange warrants on the capitol building fund, at par, for cash, the cash to be held by the state treasurer, and disbursed for labor and material furnished in the course of the erection of the state capitol building then under construction.

There had been set up a state capitol building fund, into which was to be placed money received from the sale of lands comprised within the state capitol land grant. From this fund the sum of $225,000 had been appropriated for the fiscal year ending March 31, 1894, and a somewhat greater sum for the next fiscal year (Laws of 1893, chap. 138, p. 470, § 15). The fund being short, apparently because of the failure to sell land

comprised within the grant, it was decided to issue warrants against the fund at the time of the signing of the building contract, which warrants were to be sold at par, and place the proceeds in a special account in the state treasury, to be disbursed by the treasurer on certificates issued by the capitol commission, based on estimates as the construction progressed, it being provided that the amount of warrants so issued and sold should not exceed the amount of the appropriation which remained unexpended.

This procedure constituted, as a practical proposition, a borrowing by the capitol building fund, the money realized from the sale of the warrants to be repaid by funds to be received, at some later time, from the sale of capitol grant lands. This court held that such a plan did not create any state debt (see, also, *State ex rel. State Capitol Committee v. Clausen,* 134 Wash. 196, 235 Pac. 364), but amounted to no more than the procuring by the fund of an advance against future revenues. It was apparent that the contemplated construction work would not be completed within the biennium to which the appropriation was limited by the constitutional provision above quoted. By its appropriation above referred to, the legislature manifestly contemplated no continuing appropriation, but simply an ordinary appropriation to be expended within the time limited by law.

This court upheld the validity of the resolution of the state capitol commission, adopting the plan above referred to, and held that the officers of the state would violate no law in proceeding in accordance therewith. The decision seems to have been based upon the special or trust fund theory, and not upon that of a valid, continuing appropriation by the legislature. Owing to peculiar circumstances which had arisen, the officials of the state were confronted with a most difficult prob-

lem, and this court held valid the rather unusual plan adopted by the state capitol commission, which was evolved to meet an existing emergency, serious in its nature, and calling for heroic treatment.

It is significant to note that succeeding legislatures have always made biennial appropriations from the capitol building fund, and have never attempted to make any such appropriation which would be effective beyond the two-year period.

Questions similar to those here presented, were next considered by this court in the case of *State ex rel. Johnson v. Clausen,* 51 Wash. 548, 99 Pac. 743, above referred to, in which it was held that the moneys then in question were not, under the law, payable to the state treasurer, and, hence, were not properly state funds.

This situation was changed by the legislature, as above set forth, by the enactment of § 5527, Rem. Comp. Stat., *supra,* which expressly provides that such moneys shall be deposited with the state treasurer, to "be held as special funds for said college, and are hereby appropriated to the uses and purposes for which the same were received." The inconsistency in the provisions of this section is at once manifest; on the one hand, the legislature provided that the moneys in question should be paid to the state treasurer, thereby apparently bringing the same within the provisions of § 4, article 8, of the state constitution, *supra,* and, in the same sentence, apparently undertook to indefinitely appropriate the funds to the use of the state college.

In the first place, we hold that § 5527, in so far as it provides that moneys "shall be paid to and deposited with the state treasurer," places funds so paid to that officer in the treasury of the state, or one of its funds, or one of the funds under its management,

within the purview of the constitutional provision above set forth. To hold otherwise would be to quibble with words, and, by illogical refinements of reasoning, to divide the office of the state treasurer and the treasury of the state into separate departments, or entities, beyond and outside of the contemplation of our constitutional and statute law. Money which the law directs shall be paid to the state treasurer, is received by him as such, and must be accounted for by him in that capacity.

This is not a case where the state treasurer is designated as *ex officio* custodian of certain special funds, as it might be contended were the case if the first sentence of § 5527 stood alone. Assuming, without deciding, that the legislature could designate the state treasurer *ex officio* as treasurer of some state board or institution, and provide that he shall receive and disburse funds pertaining thereto which, under the decisions of this court, are not moneys of the state, we hold that the statute in question creates no such situation, but that money paid thereunder to the state treasurer, comes within the provisions of § 4, article 8, of the state constitution above quoted, and cannot be disbursed, save pursuant to some lawful appropriation by the state legislature, and within the period limited by law.

The decisions of this court in the cases of *State ex rel. Sherman v. Pape,* 103 Wash. 319, 174 Pac. 468; *State ex rel. Thompson v. Powell,* 108 Wash. 561, 185 Pac. 573; and *State ex rel. Sherman v. Benson,* 111 Wash. 124, 189 Pac. 1000, follow *State ex rel. Johnson v. Clausen, supra,* and hold, as regards money coming into the possession of various state officers, the same does not constitute state funds, and may be disbursed by the respective officers or boards without legislative

appropriation. These cases were rightly decided, and are not controlling here.

Relators next contend that the legislature, by Rem. Comp. Stat., § 5527, above quoted, by the words referring to the fund thereby created, "and are hereby appropriated to the uses and purposes for which the same are received," intended to do away with the necessity for future biennial appropriations of the money in such fund, and to make the same continuously available for use of the state college on order of the board of regents. In support of this contention, relators cite the opinion of this court in the case of *State ex rel. Attorney General v. McGraw,* 13 Wash. 311, 43 Pac. 176, *supra,* and other cases.

We have carefully considered this case and the other authorities cited by the respective parties hereto, and we are constrained to hold, contrary to relators' contention, that the funds of the state college, which, under the provisions of § 5527, come into the custody of the state treasurer, cannot be paid out by him, save pursuant to biennial appropriations made by the legislature in due form of law. This determination finds abundant support in the opinion of this court in the case of *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5. In that case, it was held that the state industrial accident fund could be disbursed only upon specific biennial appropriations. In the course of its opinion, this court says:

"It is further argued in behalf of relator that, by reason of the trust nature of the accident fund and the particular purpose for which it is collected from employers of labor in extra-hazardous occupations, no express biennial legislative appropriation is necessary to authorize the paying from the fund of warrants of this nature, since it would be but paying such warrants from the very funds collected for that sole purpose. Viewed superficially this might seem somewhat

persuasive in relators' favor; but it seems to us that an insurmountable obstacle to the paying of such warrants, in the absence of a biennial appropriation rendering the funds available for such purposes, is found in § 4, of Art. 8, of our state constitution, reading as follows:

" 'No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act. . . . '

"Now, by the plain language of § 7676, above quoted, the funds in question and here sought to be reached are funds payable *into the state treasury*, and therefore these funds are in the state treasury by authority of express legislative enactment. How then is it possible to pay such funds out of the state treasury except in pursuance of a biennial appropriation as prescribed by the constitutional provision above quoted? Counsel for relator cite and rely upon our decisions in *State ex rel. Johnson v. Clausen*, 51 Wash. 548, 99 Pac. 743; *State ex rel. Sherman v. Pape*, 103 Wash. 319, 174 Pac. 468; *State ex rel. Thompson v. Powell*, 108 Wash. 561, 185 Pac. 573; *State ex rel. Sherman v. Benson*, 111 Wash. 124, 189 Pac. 1000.

"The first of these decisions had to do with the withdrawing of funds from the state treasury which were not there in pursuance of law, but which should have been in the possession of the treasurer of the board of regents of the state college, which funds had been paid into the state treasury by mistake. So it was not a question of payment from the state treasury of funds which the state treasurer was entitled to hold as against the treasurer of the board of regents. It was merely held that the state auditor was required to issue his warrant upon the state treasurer to the end that those funds be restored to their lawful custodian, the treasurer of the board of regents of the state college. The second of these decisions related to funds authorized by law to be paid by county officials direct to the state forester as the custodian thereof. The third of these decisions related to funds authorized by law

to remain in the hands of and management of the members of the veterans' welfare commission. The fourth of these decisions related to funds lawfully in the hands of, and authorized by law to be expended by, the state fair commissioners. In other words, in none of these cases was it a question of an appropriation, or the necessity of an appropriation, of monies which went into the state treasury in pursuance of legislative enactment. This, we think, distinguishes all these cases from the one now before us.''

It is of some significance to note that the legislature, by Rem. Comp. Stat., §§ 5520, 5521 (Laws of 1905, chap. 43, p. 73), established a special fund into which, it was provided, should be paid, for the use and support of the agricultural college and school of science (the Washington state college), all moneys collected from the rental of lands set apart by the Enabling act, or otherwise, for that institution, together with all income arising from the proceeds of the sale of any of such lands. This concerns the proceeds of money received by the state under the first Morrill act, and it is to be noted that the legislature also, by Rem. Comp. Stat., § 5526 (Laws of 1901, chap. 81, p. 172, § 4), established another fund, to be known as the scientific school fund, into which should be placed all moneys received from the sale of lands, etc., belonging to the agricultural college and school of science. In this connection, it is interesting to observe that the legislature, after establishing these funds, has always made specific biennial appropriations therefrom, through which the moneys placed in the funds have been made available for carrying on the work of the college, thereby indicating that, as to these funds, the legislature deemed regular appropriations necessary to withdraw moneys therefrom.

The case of *State ex rel. Attorney General v. Mc-Graw, supra,* although called to the attention of the

court by the relator in the case last cited, was not referred to by this court in its opinion, and we think it must be held that the special or trust fund doctrine, as promulgated in the *McGraw* case, has been, by the decision in the case of *State ex rel. Shuff v. Clausen, supra,* limited in its scope, and that moneys, even if not funds of the state in the sense that the same are available for general state purposes, and even though they are derived from some particular source, and are impressed with a trust which requires their use for a special purpose only, are, nevertheless, if required by law to be paid into the state treasury, within the purview of § 4, article 8, of the state constitution, and are not subject to withdrawal without legislative appropriation, and then only in the manner provided by law.

It would seem that the legislature, by § 5527, *supra,* recognized that funds paid to the state treasurer pursuant thereto, were subject to legislative appropriation, because the legislature in that section apparently attempted to make such appropriation. If the words, ''and are hereby appropriated to the uses and purposes for which the same are received,'' simply earmark the fund as available only for a specific purpose, and were not intended as an appropriation in the usual sense of the word, authorizing the drawing of warrants and the disbursement of the money, then the section, of course, does not authorize the withdrawal of any money from the fund. If, by the language referred to, the legislature intended a continuing appropriation, we must hold that such is forbidden by the constitution of the state.

It would seem only logical to suppose that the legislature intended to make an actual appropriation of the money which it was considered under the section would be, pursuant thereto, deposited in the treasury of the

state, subject to legislative appropriation in the usual way. This supports our conclusion that, by providing that the money be "paid to and deposited with the state treasurer," the legislature intended nothing different from the usual procedure that state money received by the state treasurer should be deposited in the state treasury.

▇ In states having a constitutional provision similar to § 4, article 8, *supra,* it has been very generally held that continuing appropriations are illegal. On this question the following cases are in point: *Menefee v. Askew,* 25 Okla. 623, 107 Pac. 159; *Westinghouse Electric & Manufacturing Co. v. Chambers,* 169 Cal. 131, 145 Pac. 1025; *Dickinson v. Clibourn,* 125 Ark. 101, 187 S. W. 909; *Jobe v. Caldwell,* 93 Ark. 503, 125 S. W. 423; *State ex rel. Chase v. Preus,* 147 Minn. 125, 179 N. W. 725.

It is urged that this court, in the cases of *State ex rel. Brainerd v. Grimes,* 7 Wash. 191, 34 Pac. 833, and *State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 Pac. 1, has held that continuing appropriations are, in certain cases, legal, and may not be limited by the constitutional provision above cited. In the *Grimes* case, an act of the legislature of 1895 fixing salaries, and allowing for the expenses of members of the board of state land commissioners, etc., was held valid as an appropriation act. The matter of the duration of the act is not discussed in the opinion, and, as the case arose within two years from the passage of the appropriation act, the court was not concerned with the lapse of the constitutional period of limitation. In the *Peel* case, the constitutional limitation upon appropriations was not referred to, and the case is not authoritative upon that question.

It is suggested that by long continued executive construction, the act of 1909, above quoted, has been

treated as a continuing and effective appropriation. A long followed executive construction is not to be lightly disregarded, but, under the circumstances here disclosed, notwithstanding any executive construction, we feel compelled to hold that a regular appropriation by the legislature is necessary, in order that money may be withdrawn from the fund in question.

Washington state college was established by the legislature at its first session (Laws of 1889-90, p. 260). This act was revised by the legislature at its second session (Laws of 1891, chap. 145, p. 334). By this act, it was provided that the state college should receive all the benefits and donations made and given to similar institutions of learning by the Congress of the United States; funds derived under the first Morrill act, the Hatch act, and the second Morrill act, being specifically mentioned. It is undoubtedly true that the legislature established the state college for the purpose of obtaining the benefit of these congressional grants, which, counsel for relators admit, the Congress intended to be to the state, it being a further contention of counsel for relators that the grant should be used, handled, and disbursed, by the college.

There is, of course, no question here involving any proposed diversion of any of these funds from the state college. The questions to be determined concern only the construction to be placed upon the acts of the legislature concerning the method to be followed in making such funds available for use. It is for the legislature to provide, by law, some system to be followed in receiving and disbursing these funds, and it is the duty of the courts, in construing laws enacted by the legislature for this purpose, to endeavor to ascertain and give effect to the legislative intent, subject to the constitution and to other rules of law and statutory construction applicable to the situation.

Counsel for relators argue that the opinion rendered by this court in the case of *State ex rel. Johnson v. Clausen, supra,* declaring the law as it then existed, had nothing to do with the enactment by the legislature of the act of the special session of 1909, now designated as Rem. Comp. Stat., § 5527, *supra.* It may be, of course, that counsel's position is correct, but the procession of occurrences affords a plausible basis for respondent's argument to the contrary.

By chapter 96, Laws of 1907, p. 179, the legislature provided that state officers, other than county treasurers, receiving money belonging to the state, or to any department or institution thereof, should transmit the same each day to the state treasurer. Thereafter, this court rendered its opinion in the case of *State ex rel. Johnson v. Clausen, supra,* holding that moneys received by the treasurer of the regents of the state college from rents and other sources, were not state finances within the meaning of chapter 96, Laws of 1907, p. 179, and need not be, by him, paid to the state treasurer. This decision was rendered February 4, 1909. Chapter 9, Laws of 1909, Ex. Ses., p. 36, passed during the month of June of that year (§ 5527, *supra*), provided that all funds belonging to the state college should be paid to and deposited with the state treasurer, thereby entirely changing the procedure to be followed under the decision in *State ex rel. Johnson v. Clausen.* The sequence of events is, to say the least, significant, and, while this line of argument, in endeavoring to determine the purpose of the legislature, is not controlling, or of paramount importance, it is entitled to weight.

Relators cite that portion of chapter 145, Laws of 1891, p. 334, in which it is provided that,

"The board of regents shall direct the disposition of any moneys belonging to or appropriated to the agricultural college, . . . ''
contending that the language of this portion of the act indicates that the legislature made a distinction between moneys appropriated, and moneys belonging, to the college. Such an argument might be important, if the legislature was endeavoring to divert from the use of the college any of the funds with which we are here concerned, or if the legislature had, by some statute, authorized the disbursement of these funds directly by the board of regents without going through the hands of any other state officer, but the legislature has otherwise provided, and we are unable to follow relators' argument, as applied to existing constitutional and statutory provisions.

Relators contend that, in any event, the Federal funds involved in this litigation should be available to disbursement on their order, regardless of any legislative appropriation. This seems to be true as regards funds derived under the so-called "Hatch act," which may be, by the appropriate government agency, paid to some person designated by the regents of the state college to receive the same, and handled without the intervention of any state officer, other than the board of regents. Money to be paid by the government under this act, need not be paid to the state treasurer, but, if paid to him, should be appropriated by the legislature as other funds so paid to that officer.

The first of the so-called "Morrill acts" (12 Stat., p. 503; § 301 *et seq.*, Title 7, U. S. C. A.) was nothing more than a grant of thirty thousand acres of land for each senator and representative in Congress to each state for the support and maintenance of at least one college, at which should be taught the science of agriculture and matters pertaining to the mechanic arts.

We are concerned only with the so-called second Morrill act (26 Stat., p. 419; § 321 *et seq.,* Title 7, U. S. C. A.), which allocates the sum of fifty thousand dollars per annum in aid of colleges of this class. The act provides:

"Sec. 2. That the sums hereby appropriated . . . shall be annually paid . . . to the state or territorial treasurer, or to such officer as shall be designated by the laws of such state or territory to receive the same, who shall, upon the order of the trustees of the college, or . . . institution . . . immediately pay over said sums to the treasurers of the respective colleges or other institutions entitled to receive the same, . . ."

Construing this act, the supreme court of the United States, in the case of *Wyoming ex rel. Wyoming Agricultural College v. Irvine,* 206 U. S. 278, said:

"The grant made in this statute is clearly to the state and not to any institution established by the state. *Haire v. Rice,* 204 U. S. 291. . . .

"It is so obvious that these appropriations are made to the state and not to any institutions within the state, and that the states, acting through their legislatures, are to expend the appropriations in accordance with the trust imposed upon them, that it is unnecessary to quote the numerous expressions in this act which support that view."

Relators cite other authorities which, they contend, support their contention to the effect that moneys received under the second Morrill act do not pertain to the state, but go directly to the college. In this connection, the opinion of this court in the case of *State ex rel. State Capitol Committee v. Clausen,* 134 Wash. 196, 235 Pac. 364, in which the state capitol land grant was considered, is in point.

We conclude that, under the opinion of the supreme court of the United States in the case of *Wyoming v. Irvine, supra,* and the opinion of this court last cited,

respondent's contention in regard to moneys paid under the Morrill act is correct, and that the same are properly received by the state and deposited in its treasury. We are not concerned here with any attempted diversion of these funds from the state college, and cases in which conflicting claims to such funds were determined, are not here in point. We have studied the authorities cited by relators, and fail to find them of controlling force upon the questions here presented.

In regard to funds accruing under the Smith-Lever act, we hold that the same rule should apply as that announced in connection with funds derived under the second Morrill act.

The alternative writ herein issued is quashed, and this proceeding dismissed.

TOLMAN, C. J., MITCHELL, MAIN, PARKER, MILLARD, and BEELER, JJ., concur.

HOLCOMB, J. (dissenting)—There is some difficulty in following the reasoning and the conclusions in the majority opinion. The reasoning lacks somewhat in continuity, and some of the conclusions seem to be purely arbitrary.

The question before this court is whether or not the three Federal funds, and the college fund, require biennial appropriations, in order to conform to our constitutional provisions relating to appropriations.

The college fund is derived from some fifty different sources, and is not, of course, controlled by the terms of the congressional legislation granting money to the state for the benefit purely of the Washington state college. The powers of the board of regents of the Washington state college were conferred by the act of 1889-90, and the supplementary act of 1891 (Laws of 1891, p. 334). These powers of the regents were the

same at the time the *Johnson* case was decided by this court, 51 Wash. 548, 99 Pac. 743. It was there held that moneys received by the treasurer of the board of regents of the state college from students' fees and rents and sources other than the general and state government, are not a part of the state finances to be paid over by him to the state treasurer.

After the decision in the *Johnson* case, *supra,* and at the instigation of the board of regents of the state college, the act of 1909 (Rem. Comp. Stat., § 5527) was enacted, which began by saying:

*"The state treasurer shall hereafter constitute and be the treasurer of all funds belonging to the State College, . . .* All moneys or funds received from the United States or from any other source whatsoever for the benefit of said State College or from the products or property of said college, or for the use of or belonging to said college shall be paid to and deposited with the state treasurer; when so deposited the same shall be held as special funds for said college, *and are hereby appropriated to the uses and purposes for which the same are received."* (Italics mine.)

Under the several statutory provisions relating to the state college, and even under the constitutional provision relied upon by the majority, it is manifest that these things are true: (1) respondent, the state auditor, could not issue a warrant for any part of these college or Federal funds to the state university of Washington, nor to any state normal school, nor to the general state fund of Washington; (2) should respondent, as state auditor, issue any such warrant, it would be illegal, and the state treasurer would be bound to refuse payment.

The act of 1891, still in force, provides that the board of regents shall direct the disposition of any moneys belonging to or appropriated to the agricultural college.

These provisions differ widely from the statutory provisions (Rem. Comp. Stat., § 7703) thought by the majority to control and decide. *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5.

In that case, all funds were required to be paid into the state treasury by each employer, prior to January 15 of each year. Rem. Comp. Stat., § 7676. The industrial compensation act disbursements can be made only upon warrants drawn by the state auditor, upon vouchers therefor transmitted to him by the industrial insurance department, and audited by him. Under the laws relating to the state college of Washington, the board of regents has been clothed with all power over the disbursement and expenditure of all moneys provided for by law.

I am also wholly at variance with the majority in their reasoning and conclusions as to the necessity of appropriations of Federal funds.

All of these funds owe their origin to the endowment of the state agricultural college by the United States by the original Morrill act. The later congressional acts were, each and all, supplementary thereto.

When the state of Washington, by law, created what is now the state college of Washington, naming it as a beneficiary of the Federal grants and subsequent donations, the state, itself, acted thereafter as a trustee for the college. The congressional acts provide that the sum of $50,000 is appropriated for the use and benefit of each state and territory by agricultural and mechanical colleges, the beneficiary institution to be selected by the state. The acts provide that the sum stated shall be paid by the secretary of the treasury of the United States to the state treasurer, who must thereupon, on the order of the trustees of the college, immediately pay over such sums to the treasurers of the respective colleges, or other institutions entitled to

receive the same, and such treasurers are required to report to the secretary of agriculture and the secretary of the interior on or before the first day of September of each year, making a detailed statement of the amount so received and of its disbursement.

It is undeniable that the fund in question cannot properly be placed in the state general fund. *Melgard v. Eagleson,* 31 Idaho 411, 172 Pac. 655; *President, etc., of Yale College v. Sanger,* 62 Fed. 177.

The exclusive supervision of the fund is vested by the Act of Congress in the treasurer of the institution designated by the state legislature as the beneficiary entitled to receive the fund. *State Board of Agriculture v. Auditor General,* 180 Mich. 349, 147 N. W. 529.

As was said by the supreme court of Idaho in the *Melgard* case, *supra:*

"Under the acts of Congress, the state treasurer, to whom the fund is transmitted by the Secretary of the Treasury, has, with reference to this fund, a mere clerical or ministerial duty to perform; that is, to pay over the fund immediately to the treasurer of the board of trustees, in this case the board of regents, upon their order. The acts of the defendants, state treasurer, and state auditor in this instance of placing this fund in the general fund by making appropriate entries upon their books to that end were mere nullities. *Blaine County v. Fuld,* 31 Idaho 358, 171 Pac. 1138. Under the acts of Congress in question the state auditor has no duty whatever to perform with respect to this fund and no authority over it. It is therefore apparent that the defendant state treasurer has but one duty to perform in the premises, and that is to pay over the sum in controversy immediately to the plaintiff, as treasurer of the board of regents."

Similar cases holding that the funds, being purely trust funds for the institution designated, although granted to the state in the first instance, are to be found in *State ex rel. Spencer Lens Co. v. Searle,* 77

Neb. 155, 109 N. W. 770; *State ex rel. Ledwith v. Brian,* 84 Neb. 30, 120 N. W. 916.

It is conceded by all, and incontrovertible, that the decision of the supreme court of the United States in the Wyoming case, *supra,* 206 U. S. 278, and the decision of the Wyoming court, itself, *State ex rel. Wyoming Agriculture College v. Irvine,* 14 Wyo. 318, 84 Pac. 90, were absolutely correct, to the effect that the grant of the Federal funds is, in the first instance, to the state.

But that does not determine that, when the state has designated the beneficiary college to receive the Federal funds, thereafter the state's fiscal officers have anything more to do with the fund than purely ministerial duties.

Nor has this court departed from, or overruled, the principle established in *State ex rel. Attorney General v. McGraw,* 13 Wash. 311, 43 Pac. 176, which is, in effect, that funds granted by the Federal government to the state for a specific purpose, are granted in trust, and can be used only in the way, and for the purpose, the grant was made by the Federal government.

Moreover, it is difficult to conceive the reason for this late contest over this question. Respondent admits in his answering brief that, since the enactment of Rem. Comp. Stat., § 5527, relating to the deposit of all funds of the state college with the state treasurer, specific biennial appropriations have never been made, on the theory that, by virtue of the language "when so deposited the same shall be held as special funds for said college, and are hereby appropriated to the uses and purposes for which the same are received," requires no legislative appropriation at all, or in itself constitutes a standing or continuing appropriation act.

There can be but little doubt but that construction

by the fiscal officers, acquiesced in by the legislature since 1909, was correct. The majority merely dismiss that long-continued executive construction, with a conclusion that it is not binding on the court.

It is a matter of common knowledge that the common school fund, ever since the enactment of the Barefoot School Boy law in 1897 (Laws of 1897, ch. 118, p. 356), has never been appropriated biennially by the legislature, but has always been apportioned by the state school superintendent and state auditor, and paid out by the state treasurer, quarterly.

If these funds have been illegally paid out since 1909, the state auditor and state treasurer have been guilty of misdemeanors under the provisions of Rem. Comp. Stat., §§ 5498 and 5499, and I do not believe they are. And, if biennial appropriations are necessary in such cases, they are necessary, also, as to the common school fund, and the present system should be immediately ended.

The cases relied upon in the majority opinion may be readily distinguished from this, but time and space forbid.

For the foregoing reasons, I am obliged to dissent.

FULLERTON, J., concurs with HOLCOMB, J.