[No. 18922.  Department One.  October 7, 1924.]

THE STATE OF WASHINGTON, *on the Relation of C. L. Shuff, as Director of Labor and Industries, Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, et al., Respondents.*[1]

STATES (29)—WARRANTS—DUTY TO ISSUE—STATUTES.  It is the duty of the state auditor to audit a duly authenticated voucher against the workmen's accident fund, and issue a warrant therefor, regardless of whether any money has been appropriated by the legislature or is in the treasury for the payment of the warrant, under Rem. Comp. Stat., § 11015, so providing as to "all grants, salaries, pay, and expenses ascertained by law," and excepting only cases of "unliquidated accounts and claims the adjustment and payment of which are not provided by law;" in view of the workmen's compensation act (Rem. Comp. Stat., §§ 7676, 7679, 7703 and 7705), providing for the accident fund, for the ascertainment of the amounts to be paid in, and for certificates for benefits accruing, and for the payment of disbursements out of the fund by warrants drawn by the state auditor upon vouchers therefor.

SAME (25) — WARRANTS — PAYMENT — NECESSITY FOR APPROPRIATION—STATUTES.  Rem. Comp. Stat., § 7708, providing that there is "hereby appropriated out of the accident fund" the sum of one million five hundred thousand dollars for the purpose of the act, is a specific appropriation for the payment of workmen's accident claims, and not merely a continuing appropriation; and upon exhaustion thereof, the state treasurer cannot pay warrants issued against the accident fund, although there is ample money therein; in view of Const., Art. 8, § 4, providing that no moneys shall ever be paid out of the treasury except in pursuance of an appropriation by law; and Rem. Comp. Stat., § 7676, providing that the accident fund is payable into the state treasury.

Application filed in the supreme court September 22, 1924, for a writ of mandamus to compel the issuance and payment of warrants against the accident fund of the industrial insurance department. Granted in part and denied in part.

[1]Reported in 229 Pac. 5.

*The Attorney General* and *M. H. Wight, Assistant,* for relators.

*Thomas L. O'Leary,* for respondents.

PARKER, J.—The relator, Shuff, as director of the department of labor and industries of this state, having general supervision and control over the division of industrial insurance of that department, seeks in this court a writ of mandamus to compel respondent Clausen, as state auditor, to audit a duly authenticated voucher transmitted to him by the department of labor and industries evidencing due allowance of a claim of an injured workman, payable from the accident fund of that division; and also to compel respondent Babcock, as state treasurer, to pay such warrants from monies collected from employers of labor in extra-hazardous occupations and in the state treasury belonging to that fund. Relator insists that it is the duty of respondents, respectively, to audit such claims, when filed and duly authenticated, to issue warrants to the claimants therefor, and to pay such warrants from any monies in that fund, regardless of any biennial legislative appropriation therefor from that fund; while respondents insist that there is no present authority for lawfully issuing any such warrants or paying the same, because the legislative biennial appropriation of 1923, made for that purpose from the accident fund, has become exhausted by the payment of warrants heretofore lawfully issued against and paid from that fund.

The case is submitted to us for final decision upon the admitted facts appearing in relator's petition for the writ, to which respondents have demurred. The legislature of 1923 appropriated from the accident fund $4,000,000, to be expended under the direction of

the director of labor and industries for the fiscal term beginning April 1, 1923, and ending March 31, 1925. Chapter 40, Laws of 1923, p. 103. During the period of this fiscal term up to September 18th of the present year, there has been expended from the accident fund in pursuance of that appropriation approximately the whole amount thereof, the very small balance of the appropriation being treated by all parties as negligible.

On September 18, 1924, relator, as director of the department of labor and industries, caused to be transmitted to respondent Clausen, as auditor, a voucher evidencing the allowance of a just and legal claim payable out of the accident fund, and requested respondent, as auditor, to audit the same and issue a warrant to the claimant therefor against the accident fund for the amount therein stated. Respondent refused to audit the voucher so transmitted to him, and advised the relator that he would not issue any further warrants against that fund until the state legislature made a further appropriation therefrom for that purpose, giving as his reason for such refusal that the 1923 biennial appropriation of $4,000,000 had been exhausted. Respondent Babcock, as state treasurer, has given relator positive notice and warning that he will not pay any warrants drawn or issued by the state auditor which will cause the expenditure from the accident fund for the fiscal year of 1925 to exceed the $4,000,000 appropriation without further appropriation by the legislature. There is now in the state treasury belonging to the accident fund a sum largely in excess of sufficient to pay the voucher and claim here in question; such sum having been received in pursuance of law as contributions to that fund from employers of workmen in extra-hazardous occupations.

We first inquire as to the duty of respondent auditor in the premises. Is it his duty to audit a voucher such as is here drawn in question, and, if found by him to be duly authenticated, to issue a warrant therefor against the accident fund in favor of the claimant, though there be no legislative appropriation from that fund for the payment of such warrant? In seeking an answer to this particular inquiry we shall assume that there is no legislative appropriation of any nature from the accident fund available for the payment of such warrant. As to whether or not there is in legal effect any such appropriation, and as to whether or not any such appropriation is necessary to authorize respondent treasurer to pay such a warrant from monies in the accident fund, we shall presently inquire. While § 4, of art. 8, of our state constitution provides that "No monies shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law;     .     .     .     " we are not aware of any constitutional limitation upon the power of the legislature to authorize the allowing and auditing of claims of this nature and the issuance of warrants for the amounts so allowed and audited to the claimants directing the treasurer to pay such warrants from funds which may become available for that purpose, though at the time there be no funds lawfully available for that purpose because of want of legislative appropriation therefor. What then has the legislature authorized in this behalf? In our workmen's compensation act, referring to sections of Remington's Compiled Statutes [P. C. §§ 3471, 3472, 3493, 3495], we read:

"§ 7676.   Insomuch as industry should bear the greater portion of the burden of the cost of its acci-

dents, each employer shall, prior to January 15th of each year, pay into the state treasury, in accordance with the following schedule, . . .

"§ 7679. Each workman who shall be injured whether upon the premises or at the plant, or he being in the course of his employment, away from the plant of his employer, or his family or dependents in case of death of the workman, shall receive out of the accident fund compensation in accordance with the following schedule, . . .

"§ 7703. The director of labor and industries shall, in accordance with the provisions of this act: . . .

"(2) Ascertain and establish the amounts to be paid into and out of the accident fund. ' . . .

"(5) Issue proper receipts for moneys received, and certificates for benefits accrued and accruing.

"§ 7705. Disbursement out of the funds shall be made only upon warrants drawn by the state auditor upon vouchers therefor transmitted to him by the department and audited by him. . . ."

Some of these sections have been amended since the original enactment of our workmen's compensation act in which they are found, but such amendments do not change any of the language above quoted in so far as such language is of any controlling effect upon our present inquiry. In § 11015, Rem. Comp. Stat. [P. C. § 6600], relating to the duties of the state auditor touching the issuance of warrants for claims allowable and payable out of funds in the state treasury, we read:

"In all cases of grants, salaries, pay, and expenses ascertained and allowed by law, found due to individuals from the state when audited, the auditor shall draw a warrant upon the treasury for the amount, but in cases of unliquidated accounts and claims the adjustment and payment of which are not provided by law, no warrant shall be drawn by the auditor or paid by the treasurer, unless the previous appropriation

shall  have  been  made  by  law  for  that  pur-
pose.    .    .    ."

These statutory provisions, we think, fully authorize
the allowing and auditing of claims of the nature here
drawn in question, and the further evidencing of the
right of claimants in that behalf to the amounts so al-
lowed and audited by the issuance of warrants there-
for against the accident fund, regardless of whether or
not there be any appropriation from the accident fund
available for the payment of such warrants. We think
that such a claim, when allowed by the department of
labor and industries in pursuance of our workmen's
compensation act, against the accident fund, becomes
a claim which is a "grant" or "pay    .    .    .
ascertained and allowed by law" within the meaning of
the language of § 11015, above quoted. Our decision
in *State ex rel. Helander v. Clausen,* 98 Wash. 253, 167
Pac. 947, it seems to us, is decisive in favor of relator
upon this question. Our prior decisions having some
bearing upon the question are cited and reviewed in
that decision. We conclude that it is the duty of re-
spondent auditor to audit the claim in question, and,
if found duly authenticated, to issue a warrant against
the accident fund therefor in favor of the claimant,
though there be no monies available for its payment
because of want of a legislative appropriation.

We next inquire as to the duties of respondent treas-
urer in the premises. Will it be his duty, as his coun-
sel contends, to refuse to pay from monies in his cus-
tody in the state treasury belonging to the accident
fund, the warrant to be duly issued by respondent
auditor against that fund in compliance with our
above holding? It is contended in behalf of relator,
in substance, that there has, in legal effect, been made
by the legislature an appropriation of monies in the

state treasury belonging to the accident fund such as to authorize the payment of warrants of this nature from any monies in that fund. One argument, as we understand counsel for relator, advanced in that behalf, is that the provisions of our workmen's compensation act, above quoted, inferentially evidence a legislative intent to make a continuing appropriation from the monies of the accident fund for the payment of claims of this nature. Putting aside for the moment the question of the power of the legislature to make such a continuing appropriation, we may concede that there would be some substantial ground for this contention if it were not for the fact that the original workmen's compensation act of 1911, of which the above quoted provisions are a part, contained a specific appropriation in these words:

"    .    .    .    there is hereby appropriated out of the accident fund for the purpose to which said fund is applicable the sum of one million five hundred thousand dollars, or so much thereof as shall be necessary for the purposes of this act." Rem. Comp. Stat., § 7708 [P. C. § 3498].

See, also, Ch. 74, Laws of 1911, pp. 349, 356, 370, 371, 373, §§ 4, 5, 24, 26 and 29 [Rem. Comp. Stat., § 7705].

Plainly, we think the specific appropriation made by the above quoted language of § 7708 of the original act, which manifestly was intended merely as a biennial appropriation, negatives any possible inference of intent on the part of the legislature, deducible from the general language of the act, to make or attempt to make a continuing appropriation, or any appropriation in excess of the $1,500,000 so specifically appropriated. That specific appropriation, of course, has long since lapsed as a biennial appropriation, and, in any event, must, in the light of this record, be consid-

ered as no longer available. It is worthy of some note in this particular that at each session of the legislature since the passage of the original act in 1911, a specific biennial appropriation has been made from the accident fund for the payment of claims of the nature here involved. This also evidences a legislative construction of the original act as not being an attempt to make a continuing appropriation. This, while not of itself controlling upon the courts, is entitled to some persuasive weight in support of our present construction of the original act touching the question of continuing appropriation.

It is further argued in behalf of relator that, by reason of the trust nature of the accident fund and the particular purpose for which it is collected from employers of labor in extra-hazardous occupations, no express biennial legislative appropriation is necessary to authorize the paying from the fund of warrants of this nature, since it would be but paying such warrants from the very funds collected for that sole purpose. Viewed superficially this might seem somewhat persuasive in relators' favor; but it seems to us that an insurmountable obstacle to the paying of such warrants, in the absence of a biennial appropriation rendering the funds available for such purposes, is found in § 4, of Art. 8, of our state constitution, reading as follows:

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years from the first day of May next after the passage of such appropriation act.    .    .    ."

Now, by the plain language of § 7676, above quoted, the funds in question and here sought to be reached

are funds payable *into the state treasury,* and there-
fore these funds are in the state treasury by authority
of express legislative enactment. How then is it pos-
sible to pay such funds out of the state treasury ex-
cept in pursuance of a biennial appropriation as pre-
scribed by the constitutional provision above quoted?
Counsel for relator cite and rely upon our decisions in
*State ex rel. Johnson v. Clausen,* 51 Wash. 548, 99 Pac.
743; *State ex rel. Sherman v. Pape,* 103 Wash. 319, 174
Pac. 468; *State ex rel. Thompson v. Powell,* 108 Wash.
561, 185 Pac. 573; *State ex rel. Sherman v. Benson,* 111
Wash. 124, 189 Pac. 1000.

The first of these decisions had to do with the with-
drawing of funds from the state treasury which were
not there in pursuance of law, but which should have
been in the possession of the treasurer of the board of
regents of the state college, which funds had been paid
into the state treasury by mistake. So it was not a
question of payment from the state treasury of funds
which the state treasurer was entitled to hold as
against the treasurer of the board of regents. It was
merely held that the state auditor was required to
issue his warrant upon the state treasurer to the end
that those funds be restored to their lawful custodian,
the treasurer of the board of regents of the state col-
lege. The second of these decisions related to funds
authorized by law to be paid by county officials direct
to the state forester as the custodian thereof. The
third of these decisions related to funds authorized by
law to remain in the hands of and management of the
members of the veterans' welfare commission. The
fourth of these decisions related to funds lawfully
in the hands of, and authorized by law to be expended
by, the state fair commissioners. In other words, in
none of these cases was it a question of an appropria-

tion, or the necessity of an appropriation, of monies which went into the state treasury in pursuance of legislative enactment. This, we think, distinguishes all these cases from the one now before us.

We conclude that there rests upon the respondent treasurer the legal duty of refusing to pay from the accident fund any warrant of the nature here in question, in the absence of an express legislative appropriation from that fund rendering it, or some portion of it, available for the payment of such warrants. It is not suggested that there has been made any appropriation for the present biennium other than the $4,-000,000 appropriation of the legislature of 1923 above noticed, which appropriation has been exhausted. It is, therefore, apparent that at the present time there is no appropriation from which the payment of such warrants can lawfully be made. Of course, this does not mean that the claimants in whose favor such a warrant may be issued will not ultimately receive payment thereof. It only means that the claimant or the holder of the warrant will have to await such payment until the legislature makes the necessary appropriation therefor from the accident fund.

Whether or not the legislature has the power to provide for the collection, custody and distribution of the accident fund in such manner that payments therefrom will not be dependent upon express legislative appropriations, and whether or not such funds being in the state treasury, as these funds are, calls for biennial appropriations in specified sums rather than biennial appropriations appropriating all such monies to the payment of such claims and warrants, we are not at this time called upon to decide. It is enough for present purposes for us to know that the funds sought to be reached are in the state treasury by express legislative

authority and are not appropriated; from which it follows that they cannot be paid out except in pursuance of an appropriation as specified in the constitutional limitation above quoted; all of which means simply that the legislature has to this extent retained control over the payment of warrants of the nature here in question.

It is ordered that a writ of mandate issue as prayed for against respondent state auditor, and that the prayer for a writ of mandate as against respondent state treasurer be denied.

MAIN, C. J., BRIDGES, TOLMAN, and PEMBERTON, JJ., concur.