[No. 28896. Department Two. November 5, 1942.]

THE STATE OF WASHINGTON, *on the Relation of John P. Van Orsdel, Plaintiff,* v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

W. H. Abel, for relator.

H. C. Brodie, for respondent.

DRIVER, J.—This is an original application in this court for a writ of mandamus. The pertinent facts, which are not in dispute, are these:

From November 24th to November 30th, inclusive, of the year 1941, pursuant to appointment and employment by the board of state land commissioners, the relator cruised the timber on certain lands of the state, his services being of the agreed and reasonable

[1]Reported in 130 P. (2d) 889.

value of $210. A voucher in that amount was approved by the board and presented to respondent state auditor. The auditor refused to issue a warrant thereon, for the reason that the appropriation made by the legislature at its 1941 session to pay check cruisers employed by the board had been vetoed by the governor, and no funds were available for that purpose. Relator brought the present proceedings to compel the issuance of a warrant.

The board of state land commissioners is composed of the commissioner of public lands, the secretary of state, the state treasurer, the attorney general, and the superintendent of public instruction. Laws of 1941, chapter 217, p. 679, § 1, Rem. Supp. 1941, § 7797-10. (For convenience, hereinafter this statute will be referred to as the 1941 land board act.)

The state constitution, Art. XVI, § 1, reads, in part:

"All the public lands granted to the state are held in trust for all the people, and none of such lands, nor any estate or interest therein, shall ever be disposed of unless the full market value of the estate or interests disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state; . . ."

Section 2 of the same article provides that

"None of the lands granted to the state for educational purposes shall be sold otherwise than at public auction to the highest bidder; and the value thereof, less the improvements, shall, before any sale, be appraised by a board of appraisers, to be provided by law, the terms of payment also to be prescribed by law, and no sale shall be valid unless the sum bid be equal to the appraised value of said land."

The legislature has constituted the board of state land commissioners the board of appraisers provided for in Art. XVI, § 2, of the state constitution. See Laws

of 1927, chapter 255, p. 471, § 12 (Rem. Rev. Stat., § 7797-12). Section 3 of the 1941 land board act, p. 681 (Rem. Supp. 1941, § 7797-23A), is as follows:

"The Board of State Land Commissioners shall exercise general supervision and control over the sale or lease for any purpose of land granted to the state for educational purposes and also over the sale of timber, fallen timber, stone, gravel and all other valuable materials situated thereon. It shall be the duty of the Commissioner of Public Lands, on its request, to furnish the Board with all reports, data and information in the records of his office pertaining to any such proposed sale or lease, and the Board of State Land Commissioners shall have power, if it deems it advisable, to order that any particular sale or lease of such land or valuable materials be held in abeyance pending further inspection and report. *The Board may cause such further inspection and report of land or materials involved in any proposed sale or lease to be made and for that purpose shall have power to employ its own inspectors, cruisers and other technical assistants.* Upon the basis of such further inspection and report the board shall determine whether or not, and the terms upon which, the proposed sale or lease shall be consummated." (Italics ours.)

Section 4, vetoed by the governor, read:

"For the purpose of carrying out the provisions of section 3, there is hereby appropriated to the Board of State Land Commissioners from the general fund for the biennium ending March 31, 1943, the sum of twenty-five thousand dollars ($25,000), or so much thereof as shall be necessary."

Relator, in the present case, was employed by the board under the authority of § 3.

It thus appears that the constitution outlines a general policy for the protection of the valuable public land resources of the state, and that, by legislative enactment, the board of state land commissioners has been given important duties to perform in connection

with such policy. Under § 3 of the 1941 land board act, the board has been directed to exercise supervision and control over sales of certain state lands and timber, and has been authorized, at its discretion, to employ cruisers to inspect and report on such properties when they are about to be sold.

Manifestly, in a doubtful case, the board cannot intelligently determine whether or not the terms of a proposed sale of state timber or timber land are fair and advantageous to the state without first having the property re-examined by an expert cruiser. The right to employ such expert, therefore, is an essential prerequisite to the performance of the land board's statutory functions. The veto affected only § 4, the remainder of the act having been approved by the governor, and the duties of the board outlined in § 3 have not been retracted or diminished. It is our conclusion, then, that the employment of relator was authorized by law and was reasonably necessary in the discharge of the duties of the board imposed upon it by the constitutional and statutory provisions cited.

Rem. Rev. Stat., § 11015 [P. C. § 6600], in part, provides that,

"In all cases of grants, salaries, pay, and expenses ascertained and allowed by law, found due to individuals from the state when audited, the auditor shall draw a warrant upon the treasury for the amount, but in cases of unliquidated accounts and claims the adjustment and payment of which are not provided by law, no warrant shall be drawn by the auditor or paid by the treasurer, unless the previous appropriation shall have been made by law for that purpose, nor shall the whole amount drawn by and paid under any head ever exceed the amount thus appropriated: . . ."

The only remaining question is this: May the state auditor be directed, by mandate of this court, to

issue a warrant on relator's voucher when the board does not presently have any funds with which to pay it?

The question has already been answered by this court in *State ex rel. Helander v. Clausen*, 98 Wash. 253, 167 Pac. 947; *State ex rel. Shuff v. Clausen*, 131 Wash. 119, 229 Pac. 5; and *State ex rel. Pacific Bridge Co. v. Washington Toll Bridge Authority*, 8 Wn. (2d) 337, 112 P. (2d) 135.

In the first case, the state auditor refused to issue a warrant in payment of the salary of relator, a deputy inspector and supervisor of public offices, for the sole reason that the appropriation made for that purpose had been vetoed. A statute then in force (Rem. Code § 8346) authorized the employment of " 'not exceeding three deputies, who shall each receive a salary not exceeding two thousand five hundred dollars per annum.' " (Relator's salary was within the prescribed limit.) This court granted a writ of mandamus to compel the issuance of the warrant.

In the *Shuff* case, the state auditor was required, by mandate of this court, to audit a voucher and issue a warrant against the workmen's accident fund upon the duly allowed claim of an injured workman, although the appropriation made from that fund by the legislature to pay such claims had become exhausted.

In the *Pacific Bridge Company* case, the relator had constructed the Narrows bridge near Tacoma under a contract awarded to it by the Washington toll bridge authority. Relator petitioned for an original writ of mandate to compel the state auditor to issue warrants for the balance due under the contract. One of the defenses interposed on behalf of the auditor was that sufficient moneys were not available in the toll bridge

authority's fund. We held that the defense was not tenable, and issued the writ.

The cases cited, we think, are controlling here, and the writ of mandate will issue.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.