[No. 30601. Department Two. July 1, 1948.]

THE STATE OF WASHINGTON, *on the Relation of the State Employees' Retirement Board, Plaintiff*, v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

[1]Reported in 195 P. (2d) 646; 201 P. (2d) 172.

*The Attorney General* and *Lucile Lomen, Assistant,* for relator.

*Lyle L. Iversen, Assistant Attorney General,* for respondent.

*Wettrick, Flood & O'Brien, amicus curiae.*

STEINERT, J.—The relator, state employees' retirement board, instituted in this court an original mandamus action, seeking to compel respondent, the state auditor, to honor a voucher and issue a warrant in payment of a claim for refund of contributions made by a former state employee to the state employees' retirement fund. An order to show cause was issued by this court, and in response thereto the state auditor appeared and demurred to relator's petition. The matter is now before us on the pleadings and the law applicable to the case as presented thereby.

The facts, as set forth in the petition and admitted by the demurrer, are these: On November 10, 1947, one Clarence Fleming, theretofore a state employee and member of the state employees' retirement system, made written demand upon the state employees' retirement board, relator herein, for refund to him of all contributions previously paid by him and standing to his credit in the employees' savings fund of the retirement system, as permitted by, and in accordance with, the provisions of chapter 274, p. 1168, Laws of 1947 (Rem. Supp. 1947, § 11072-1 *et seq.*), commonly known as the state employees' retirement system act. The board, having found that the claimant was eligible to receive the refund and that the amount claimed by him was correct and proper, prepared a voucher authorizing the state auditor to draw a warrant for the payment of the claim, under the provisions of the 1947 legislative act. The auditor acknowledged receipt of the voucher, but refused to approve or honor the claim, for the reason and upon the ground that he could find no statutory appropriation made for that purpose, as required by law. In consequence of the stand taken by the state auditor, this action was instituted by the relator.

Chapter 274, Laws of 1947 (Rem. Supp. 1947, § 11072-1 *et seq.*), establishes a retirement system embracing in its membership all state, monthly salaried employees, with certain exceptions, and also the employees of such political subdivisions of the state as shall exercise the option of coming under the act. The administration and management of the system are vested in a retirement board consisting of four state officers and three state employees.

As contemplated by the act, moneys for use in payment of the benefits prescribed therein are accumulated by employee and employer contributions. Beginning October 1, 1947, each employee is required to contribute annually five per cent of that part of his compensation earnable, not in excess of thirty-six hundred dollars per annum, and the amount so contributed is paid into what is designated in the act as the "Employees' Savings Fund." The employee is also required to contribute one dollar and fifty cents per annum

to what is designated in the act as the "Expense Fund." Further reference to the expense fund, its purposes, and the means of replenishing it will be made a little later herein.

Beginning April 1, 1949, the state as employer, and any political subdivision thereof becoming an employer under the provisions of the 1947 act, will be required to contribute periodically to the "Employer's Accumulation Fund" certain amounts, determined in accordance with the provisions of the act and realized from legislative appropriations in such amounts as the retirement board shall have ascertained to be necessary.

In addition to these specific funds mentioned above, the retirement act also creates several other "funds" designated respectively as the "Annuity Reserve Fund," the "Pension Reserve Fund," and the "Income Fund," but with these we are not here particularly concerned. These descriptive terms have reference simply to the accounting records of the retirement board, and not to any segregation or identification of moneys in the state treasury. In fact, all moneys coming to the retirement board through contributions or otherwise are kept on deposit in the state treasury under what is designated as the "Washington State Employees' Retirement Fund." The state treasurer is by the express terms of the act made the custodian of all funds of the retirement system, and is authorized and required to deposit any portion of the moneys not needed for immediate use "in the same manner and subject to all the provisions of law with respect to the deposit of state funds by such Treasurer." That officer is further required to furnish annually to the retirement board a statement of the amount of moneys in his custody belonging to the retirement system.

The members of the retirement board are trustees of the several funds created by the act, with full power to invest them in certain types of bonds and other obligations, and to purchase insurance contracts as specified in the act. For the purpose of meeting disbursements for annuities and other payments in excess of its receipts, the retirement board is required to keep available, on deposit in the state

treasury, an amount not exceeding ten per cent of the total amount of its funds.

Sections 19 to 26, inclusive, of the act (Rem. Supp. 1947, §§ 11072-19 to 11072-26, inclusive), provide for and specify the various *benefits* to which an employee is or may be entitled on his retirement from service, whether his retirement be optional, compulsory, or resulting from disability. These benefits consist generally of (a) an annuity; (b) a basic service pension; (c) a membership service pension; and (d) a prior service pension.

Section 27 of the act (Rem. Supp. 1947, § 11072-27), relating to refunds of contributions on withdrawal of an employee from service before retirement, provides:

"Should a member cease to be an employee before attaining age sixty (60), or after such age *but before becoming eligible for benefits,* for reasons other than his disability or death as provided in sections 21, 22, 23, 24, 25, 26 and 28, he shall be paid all or part of the contributions standing to his credit in the Employees' Savings Fund, with regular interest additions, as he shall demand in writing upon forms furnished by the Retirement Board, subject to the provisions of section 30 [which section has no bearing upon the question under consideration in this case]. Any person who has withdrawn his contributions from the Employees' Savings Fund, as provided for in this section, and who again becomes a member, may restore to the Employees' Savings Fund all or part of such contributions previously withdrawn by him." (Italics ours.)

The claim for refund here involved was made pursuant to the section just quoted.

The contention and argument of the respondent state auditor may be summarized as follows: The funds of the state employees' retirement system are required by statute to be kept in the state treasury and, in fact, are actually placed and kept there; any refund made pursuant to the claim here in question would have to be made from the Washington state employees' retirement fund actually in the state treasury; moneys in the state treasury cannot be withdrawn therefrom or expended except upon specific legislative appropriation; no such appropriation has ever been made in this instance; hence, the respondent cannot

lawfully be required to draw a warrant for the refund of the contribution made by the claimant employee. Respondent's contention is based fundamentally upon Art. VIII, § 4, of the Washington constitution, as revised by the eleventh amendment, which reads:

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

In support of his contention, respondent cites and relies upon *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751, and *Mason-Walsh-Atkinson-Kier Co. v. Department of Labor & Industries,* 5 Wn. (2d) 508, 105 P. (2d) 832.

Opposing respondent's reasoning and argument, the relator contends that the funds of the retirement system are not public funds within the scope and meaning of the Washington constitution, but are proprietary funds committed to the custody of the state treasurer as trustee for particular objects and purposes, and subject to disbursement upon authorization of the retirement board, and that repayment of an employee's contribution out of such funds does not require an appropriation by the legislature. In support of this contention, relator cites and relies upon *State ex rel. Sherman v. Pape,* 103 Wash. 319, 174 Pac. 468; *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120; *State ex rel. Van Orsdel v. Yelle,* 15 Wn. (2d) 320, 130 P. (2d) 889.

Messrs. Wettrick, Flood, and O'Brien, appearing *"amicus curiae"* for Washington Federation of State Employees, A. F. of L., join in the contention made by the relator.

Each of the parties litigant endeavors to distinguish the cases cited by its or his opponent. For reasons which will presently appear, however, we will not discuss or quote from any of these judicial decisions.

As indicated above, respondent's refusal to honor the claim for refund and his present contention in this controversy are based on the theory that the required legislative appropriation for such purpose has never been made. Relator and *amicus curiae* seemingly concede, or at least likewise proceed upon the assumption, that no specific appropriation has yet been made by the legislature for refund of an employee's contributions to the employees' savings fund. Proceeding upon that theory, counsel make their respective contentions as summarized above and rely upon the cases heretofore cited.

We do not agree with the theory upon which respective counsel apparently proceed, and, for that reason, we do not follow their argument nor analyze the cases upon which they severally rely.

In our opinion, there *was* a specific legislative appropriation, broad enough to cover claims of the kind involved here. If there was such appropriation, it necessarily follows, and counsel for both parties would no doubt concede, that the warrant in this instance should have issued and the amount thereof paid. We shall briefly state our reasons for this conclusion.

Section 42 of the 1947 act, p. 1194, providing for an appropriation, which section does not appear in Rem. Supp. 1947, reads as follows:

"There is hereby appropriated for the biennium ending March 31, 1949, from the General Fund of the State of Washington, the sum of one hundred thousand dollars ($100,000) or as much thereof as shall be found necessary. The money is to be allocated to the *Expense Fund,* as provided for in section 11 of this act [Rem. Supp. 1947, § 11072-11(f)], *and is to be used to actuate and carry out the provisions of this act."* (Italics ours.)

It will be noted that the amount of this appropriation is allocated to the *expense fund* of the retirement system and is to be used to *actuate and carry out the provisions of the act,* which act vests in the retirement board the administration and management of the system of retirement.

Section 11(f) of the act (Rem. Supp. 1947, § 11072-11(f)), in so far as material here, provides as follows:

"The Expense Fund shall be the fund from which shall be paid the expenses of the administration of this act, *exclusive of amounts payable as retirement allowances and other benefits provided for in this act.* The Retirement Board shall ascertain and shall request from the Legislature an appropriation equal to the amount necessary to defray and cover the expenses of administering this act during the ensuing biennium. . . ." (Italics ours.)

It will be noted that, by express provision, no part of the expense fund is to be used for the payment of retirement allowances or other benefits provided for in the act, but only for the payment of the expenses incident to the administration of the act.

The refund of an employee's contributions on his withdrawal from service before retirement is not a "retirement allowance," nor is it one of the "benefits" to which a "retiring member" is entitled under the act. An employee who withdraws from service, or any member of the retirement system who ceases to be an employee, before the prescribed time for his retirement, is not a "retiring member" under the act and is not entitled to any of the "benefits" of the retirement system, such as an annuity or pension. By such withdrawal or cessation of membership, he is effectively precluded from receiving any of the prescribed benefits. His only right, under such circumstances, is to demand and receive a refund of the contributions made by him while he was a member in good standing of the retirement system. But such a refund, or the right to receive it, is not one of the prescribed "benefits" of the act. In a sense, the contribution paid by the employee into one of the funds which the retirement board administers may be compared to the price paid by one for admission to a game or play, or for a railroad ticket. If the holder thereof declines to use the ticket, or puts himself in such position that he cannot use it, he forfeits any benefits that he might otherwise have derived from his contract. His only right in such instance would, in any event, be to have the amount of the purchase price refunded to him.

In our opinion, the refunding of contributions to an employee who has withdrawn from service, or to a member

of the retirement system who has ceased to be an employee, before retirement constitutes one of the duties imposed upon the retirement board in its administration and management of the retirement system; and one of the purposes of the appropriation provided in § 42 of the act as passed by the legislature was to enable the board "to actuate and carry out the provisions of this act" by making such refund.

While the contributions by the employee may originally have been paid into the employees' savings fund and may, as a matter of accounting, be still standing therein to the credit of the employee, we are of the considered opinion, for the reasons heretofore set forth, that the refund of the contributions to the employee is to be made from the *expense fund*; that the legislative appropriation provided in § 42 of the act was intended to cover, among other things, such refund as constituting an expense of administering the retirement system; and that the use of such appropriation to the extent necessary for such refund is a function to be exercised by the retirement board under its duty "to actuate and carry out the provisions of this act."

Since, in our opinion, there was thus an express appropriation for paying such refund, the claimant was entitled to have a warrant therefor issued and paid.

Let a writ issue directing the respondent to honor the voucher and issue a warrant pursuant thereto.

MALLERY, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.

## ON REHEARING.
### [*En Banc.* December 27, 1948.]

STEINERT, J.—On April 12, 1948, the relator, State Employees' Retirement Board, filed in this court its original petition for a writ of mandamus to compel the respondent, Cliff Yelle, as state auditor, to honor a voucher and issue a warrant in payment of a claim presented by a former state employee for refund of contributions made by the employee to the state employees' retirement fund. In re-

sponse to an order to show cause, issued by the chief justice, the respondent auditor appeared and demurred to the petition. The matter was thereafter argued and submitted to this court for decision, and on July 1, 1948, a Departmental opinion was filed directing the issuance of a writ of mandamus as prayed for by the relator. Thereafter, each of the parties to the action filed a petition for rehearing, and both of these petitions were subsequently granted. A rehearing *En Banc* was had November 22, 1948, and the cause has again been considered by this court.

As appears by the Departmental opinion, this case arose out of a claim made by a former state employee and member of the state employees' retirement system for refund of all contributions previously paid by him and standing to his credit in the employees' savings fund of the retirement system, as provided by Laws of 1947, chapter 274, p. 1168 (Rem. Supp. 1947, § 11072-1 *et seq.*), commonly known as the state employees' retirement system act. The retirement board found that the claim was properly allowable and directed the state auditor to draw a warrant for the payment thereof, but the auditor refused to approve and honor the claim, or to draw the warrant, for the reason, as stated by him, that there was no legislative appropriation made for that purpose, as required by law.

As further appears by the Departmental opinion, the parties in their original briefs agreed, or at least proceeded upon the assumption, that no specific appropriation had ever been made by the legislature for refund of an employee's contributions to the employees' savings fund. Upon that understanding, the respondent contended that any such refund would be in violation of Art. VIII, § 4, of the Washington constitution as revised by the eleventh amendment, which provides that no moneys shall be paid out of the treasury of the state, or out of any of its funds or any of the funds under its management, except in pursuance of an appropriation by law. The relator, on the other hand, contended that, under the terms and provisions of the retirement system act, the funds of the retirement system are

of such nature and character that repayment therefrom of an employee's contribution thereto does not require an appropriation by the legislature.

This court, in its Departmental opinion, did not agree with the assumption upon which both parties litigant were relying, but, on the contrary, took the position that the retirement system act disclosed upon its face that there had been in fact a specific legislative appropriation, broad enough to cover claims of the kind involved in the instant proceeding. The rationale of the Departmental opinion was that the refunding of employees' contributions constitutes one of the duties imposed upon the retirement board in its *administration and management* of the retirement system; that such refunds are properly an expense of *administering* the system and are to be paid out of the expense fund as defined in § 11 (f) of the act (Rem. Supp. 1947, § 11072-11 (f)); and that by § 42 of the act, as numbered in the session laws of 1947, the legislature made a specific appropriation of one hundred thousand dollars to be allocated to the expense fund, and "to be used to actuate and carry out the provisions of this act." Upon that theory, the Departmental opinion directed the issuance of a writ commanding the respondent state auditor to honor the voucher and to draw and deliver a warrant for the amount of the employee's claim. For the reasons above stated, it was, of course, implicit in the opinion that the refund to the employee should be made out of the *expense fund.*

█ Petitions for rehearing were thereupon filed by both parties, arguing and demonstrating that we were in error in holding that refunds of members' contributions were payable out of the expense fund. Candor compels us to acknowledge the error. In this connection, the writer of the Departmental opinion (who is also the author of the present opinion) desires to say that the error is due solely to *his* failure to note the fact that § 11 (a) of the act (Rem. Supp. 1947, § 11072-11 (a)), which was not directly mentioned in the former opinion, specifically provides, *inter alia,* as follows:

"The contributions of a member returned to him upon his withdrawal from service, or paid to his estate, or designated beneficiary in event of his death, as provided in this act, *shall be paid from the Employees' Savings Fund.*" (Italics ours.)

Since such refunds are payable exclusively out of the *employees' savings fund,* and not out of the expense fund, and since, concededly, the legislature made no specific appropriation to be allocated to the employees' savings fund, the theory upon which the Departmental opinion was made to rest is without support and therefore is no longer tenable. It was for this reason that the petitions for rehearing were granted.

Under this situation, we are now confronted with, and are required to decide, the question upon which the parties originally took issue. That question is stated by the relator as follows:

"Is the State Employees Retirement fund, which is subject to the control and management of the Retirement Board and of which the treasurer is custodian, a fund from which the repayment of a separating member's contribution, required by law to be made upon request, cannot be made in the absence of an appropriation?"

Respondent states the question in the following form:

"Should the state auditor be required to draw warrants for the refund of contributions paid under the State Employees' Retirement Act in the absence of an appropriation or compliance with the Deficiency Statute?"

For purposes of our present discussion, the question may be considered as being simply whether retirement contributions may be returned or repaid to the contributing members, without specific legislative appropriation therefor.

The contention and argument of the respondent state auditor touching the question under consideration may be summarized, as was done in the former opinion, as follows: The funds of the state employees' retirement system are required by statute to be kept *in the state treasury* and, in fact, are actually placed and kept there; any refund made pursuant to the claim here in question would have to be

made from the Washington state employees' retirement fund *actually in the state treasury*; moneys in the *state treasury* cannot be withdrawn therefrom or expended except upon specific legislative appropriation; no such appropriation has ever been made in this instance; hence, the respondent cannot lawfully be required to draw a warrant for the refund of the contribution made by the claimant employee. This contention is based fundamentally upon Art. VIII, § 4, of the Washington constitution, as revised by the eleventh amendment, which reads:

"No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within one calendar month after the end of the next ensuing fiscal biennium, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

Challenging the reasoning and argument of respondent, the contention of the relator is, as summarized in the former opinion, that the funds of the retirement system are not *public funds* within the scope and meaning of the Washington constitution, but are *proprietary funds committed to the custody of the state treasurer as trustee for particular objects and purposes, and subject to disbursement solely upon authorization of the retirement board,* and that consequently repayment, out of such funds, of an employee's former contributions thereto does not require an appropriation by the legislature.

The solution of the problem involved in the present inquiry must be based upon, and proceed from, a critical examination and consideration of the legislative act here in question, particularly certain provisions thereof.

Chapter 274, Laws of 1947 (Rem. Supp. 1947, § 11072-1 *et seq.*) created a retirement system for the employees of the state of Washington and the employees of such political subdivisions of the state as shall exercise the option of

coming under the act (§§ 2, 43 (Rem. Supp. 1947, § 11072-2, -42)). The administration and management of the retirement system, the responsibility for making effective the provisions of the act, and the authority to make all rules and regulations necessary therefor are vested in a retirement board consisting of four state officers, namely, the insurance commissioner, the attorney general, the state treasurer, and the state auditor, and three state employees who must be members of the retirement system (§§ 2, 3 (Rem. Supp. 1947, § 11072-2, -3)).

The act creates six funds which, for the purposes of accounting records, are described as the employees' savings fund, the employees' accumulation fund, the annuity reserve fund, the pension reserve fund, the income fund, and the expense fund (§ 11 (Rem. Supp. 1947, § 11072-11)). In this proceeding, we are concerned primarily with the employees' savings fund.

Beginning October 1, 1947, each state employee who is a member of the retirement system is required to contribute five per cent of that part of his compensation earnable, not in excess of $3,600 per annum, *to the employees' savings fund,* and $1.50 per annum to the expense fund; the amount payable into the employees' savings fund is deductible from the employee's salary or wages as shown by each payroll on which such individual is carried (§ 34 (Rem. Supp. 1947, § 11072-34)). Every member of the retirement system is deemed to consent and agree to such deductions and is required to acknowledge receipt in full of his salary or compensation, as a complete discharge and acquittance of all claims and demands for the services rendered by him (§ 35 (Rem. Supp. 1947, § 11072-35)). The officer responsible for making up the payroll is required to transmit promptly to the retirement board a copy of the original payroll voucher showing thereon all deductions, together with warrants or checks covering such deductions; and the retirement board, after making a record of all such receipts, is required to pay the amount thereof to the state treasurer

*for use according to the provisions of the act* (§ 36 (Rem. Supp. 1947, § 11072-36)).

Section 11 (a) of the act (Rem. Supp. 1947, § 11072-11 (a)) provides:

*"Employees' Savings Fund.* The Employees' Savings Fund shall be the fund in which shall be accumulated the contributions from the compensation of members for the purchase of annuities. The Retirement Board shall provide for the maintenance of an individual account with each member of the Retirement System showing the amount of the member's contributions *together with interest accumulations thereon. The contributions of a member returned to him upon his withdrawal from service, or paid to his estate, or designated beneficiary in event of his death, as provided in this act, shall be paid from the Employees' Savings Fund.* Any accumulated contributions forfeited by failure of a member, or his estate, to claim the same as provided for in this act shall be transferred from the Employees' Savings Fund to the Income Fund. The accumulated contributions of a member, upon his retirement, shall be transferred from the Employees' Savings Fund to the Annuity Reserve Fund." (Italics ours.)

Section 27 of the act (Rem. Supp. 1947, § 11072-27) provides:

*"Refund of Contributions on Withdrawal from Service Before Retirement.* Should a member cease to be an employee before attaining age sixty (60), or after such age but before becoming eligible for benefits, for reasons other than his disability or death as provided in sections 21, 22, 23, 24, 25, 26 and 28, *he shall be paid all or part of the contributions standing to his credit in the Employees' Savings Fund, with regular interest additions,* as he shall demand in writing upon forms furnished by the Retirement Board, subject to the provisions of section 30 [which section has no bearing upon the question under consideration in this case]. Any person who has withdrawn his contributions from the Employees' Savings Fund, as provided for in this section, and who again becomes a member, may restore to the Employees' Savings Fund all or part of such contributions previously withdrawn by him." (Italics ours.)

Should a member die before his service retirement becomes effective, the amount of the accumulated contributions standing to his credit in the employees' savings fund,

at the time of his death, is to be paid to such person, having an insurable interest in his life, as he shall have nominated by written designation duly executed and filed with the retirement board, or, if there be no such designated person, then to his legal representative (§ 28) (Rem. Supp. 1947, § 11072-28).

By § 29 of the act (Rem. Supp. 1947, § 11072-29), the retirement board may, in its discretion, withhold payment of all or any part of a member's contributions *for not more than six months after such member has ceased to be an employee.*

The claim for refund here involved was made by the employee himself pursuant to § 27, quoted above, and was approved by the retirement board.

By express provision of the act, the members of the retirement board are made the trustees of the several funds created by the act, with power to invest them in certain designated securities (§ 8(a) [Rem. Supp. 1947, § 11072-8(a)]). For the purpose of meeting disbursements for annuities and other payments in excess of the receipts, the retirement board is required to keep an amount, not exceeding ten per cent of the total amount of the funds provided for by the act, on deposit in the state treasury (§ 8(b) [Rem. Supp. 1947, § 11072-8(b)]).

The state treasurer is by the act made the custodian of all securities purchased by the board and of all funds of the retirement system. The functions, duties, and authority of the treasurer are set forth in § 9 of the act (Rem. Supp. 1947, § 11072-9), which we shall quote in full:

"Sec. 9. (a) *State Treasurer Custodian of Funds.* All bonds or other obligations purchased according to section 8 shall be forthwith placed in the hands of the State Treasurer, who is hereby designated as *custodian* thereof, and it shall be his duty to collect the principal thereof and the interest thereon as the same becomes due and payable, and place the same when so collected into the *Retirement System's Funds* herein provided for bonds or other obligations. The Retirement Board may sell any of said bonds, or other obligations upon like resolution, and the proceeds thereof shall be paid by the purchaser to the State Treasurer upon

delivery to him of such bonds or other obligations by the State Treasurer.

"(b) *The State Treasurer shall be the custodian of all other funds of the Retirement System and all disbursements therefrom shall be paid by the State Auditor upon vouchers duly authorized by the Retirement Board and bearing the signature of the duly authorized officer of the Retirement Board.*

"(c) The State Treasurer is hereby authorized and directed to deposit any portion of the funds of the Retirement System not needed for immediate use in the same manner and subject to all the provisions of law with respect to the deposit of state funds by such Treasurer, and all interest earned by such portion of the said Retirement System's funds as may be deposited by the State Treasurer in pursuance of authority herewith given shall be collected by him and placed to the credit of the Retirement Fund." (Italics ours.)

Section 11 (e) of the act (Rem. Supp. 1947, § 11072-11 (e)) makes provision, *inter alia,* for the allowance of interest on contributions from members.

Section 12 (Rem. Supp. 1947, § 11072-12) exacts of the state treasurer the duty to furnish annually to the retirement board a statement of the amount of the funds in his custody belonging to the retirement system. That section contains this further provision:

"Any member of the Retirement System shall be furnished with a statement of the amount to the credit *of his individual account* in the Employees' Savings Fund upon his written request . . ." (Italics ours.)

Other sections of the act provide for various kinds of service retirement allowances for eligible members, upon their retirement from service. Still other sections provide for contributions to be made by the state, to defray its part of the costs of the act, for employees in the respective departments, agencies, commissions, or offices wherein they are employed; such amounts are to be included by the various departments in their biennial budgets and requests for legislative appropriations.

By § 42 of the act (which section, however, does not appear in Rem. Supp. 1947), the legislature appropriated

from the general fund of the state, for the biennium ending March 31, 1949, the sum of one hundred thousand dollars, to be allocated to the *expense fund* and "to be used to actuate and carry out the provisions of this act." This was the only appropriation made by the legislature under that act.

For clear understanding of the material provisions of these various sections of the state employees' retirement system act, in so far as they bear upon the particular question here under consideration, we summarize them as follows: The act established a retirement system for the benefit of the employees of the state and its political subdivisions. To that end, the act created a retirement board consisting of four state officers and three state employees, to whom was committed the administration and management of the retirement system, with full authority in them to make all necessary rules and regulations therefor, and with corresponding responsibility for making the provisions of the act effective. For the proper administration of the act, several named funds were created, and the members of the retirement board were made trustees thereof, with power to invest the funds in designated securities. However, for the purpose of meeting disbursements for annuities and other payments in excess of the receipts, the retirement board is required to keep liquid, in the state treasury, an amount not exceeding ten per cent of the amount in the respective funds.

The state treasurer, who is a member of the retirement board, is authorized and directed to deposit any portion of the funds of *the retirement system not needed for immediate use,* in the same manner as *state funds* are deposited. The state treasurer is made the *custodian* of all the securities, as well as of all funds, of the retirement system, and disbursements therefrom are to be made by the state auditor, another member of the board, *upon vouchers duly authorized by the retirement board.*

Every state employee who is a member of the retirement system is required to contribute five per cent of his compensation earnable, not in excess of thirty-six hundred dol-

lars per annum, into the employees' savings fund, and such member is deemed to have consented to the deduction of that amount of his compensation, as determined by the periodic payrolls. The amounts so deducted must be transmitted by the officer responsible for making up the payroll to the retirement board, and the board in turn must pay such amounts to the state treasurer *for use according to the provisions of the act.*

If a member of the retirement system ceases to be an employee before becoming eligible for the benefits of the act, he is entitled, upon written demand by him, to be paid, from the *employees' savings fund,* all or any part of the contributions standing to his credit in that fund, *together with regular interest thereon*; should such member die before his service retirement becomes effective, the amounts of such accumulated contributions standing to his credit at the time of his death are to be paid either to the person designated by him in writing or else to his legal representative. The retirement board *may not withhold such contributions* from a demanding member for more than six months after he has ceased to be an employee. Any member of the retirement system is entitled, upon his written request, to a statement of the amount standing to the credit of his individual account.

No appropriation was made by the legislature under the terms of the act, except the sum of one hundred thousand dollars which was allocated to the *expense fund.*

██ It is accepted doctrine in this jurisdiction that the state, in the exercise of its police powers, can provide by legislative act that all funds coming into the hands of the state treasurer shall become and be *state funds*; but, on the other hand, the legislature may, in its discretion, also provide for the collection and administration of certain funds without making them *state or public funds.*

In *State ex rel. Sherman v. Pape,* 103 Wash. 319, 174 Pac. 468, which involved moneys collected by the state forester and fire warden for fire protection of private forest lands, this court said:

"In the exercise of its police power the state undoubtedly could have made all funds its own, to be dealt with as state funds contemplated by the constitution; but it was not necessary so to do. The legislative wisdom could in its discretion provide for the collection and administration of the funds without making them state or public funds. This the legislature by this act [chapter 105, Laws of 1917] undoubtedly did, and it is not our business to question its wisdom."

This same language was quoted in *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 82 P. (2d) 120, which involved funds of the toll bridge authority, payable to the state treasurer.

No contention is made in the case at bar that the legislature did not have constitutional power to create a retirement system, such as the one involved here, for the benefit of state and municipal employees.

Under the law as enunciated in the cases above cited, and others, it is indisputable that, in establishing such a system, the legislature could elect to create a fund for that purpose either (1) by making such fund a *state fund* to be placed and·kept in the *state treasury,* under the control of the state treasurer and the state auditor, and disbursable only in pursuance of an appropriation as provided by Art. VIII, § 4, of the constitution, or (2) by making the fund, in whole or in part, a special one, of a proprietary nature and designed to meet certain specific objectives, which fund is to be placed in the custody of the state treasurer acting *ex officio* as a member of the retirement system rather than in his constitutional capacity, and which is to be expended as directed by the legislature without a specific appropriation.

The mere fact that the state treasurer may be made the custodian of a particular fund and may be required to render certain services with respect to such fund, does not of itself make the moneys so received and held by him *state funds in the state treasury.* Except in cases where the constitution requires that moneys be paid *into the state treasury,* as, for instance, taxes for state purposes, which moneys may be paid out only pursuant to an appropriation

by law, the legislature has authority to determine the nature, the place and character of custody, and the requisites for the expenditure of a fund created by it.

The question whether funds coming into the hands of the state treasurer could in any event be disbursed without an appropriation therefor, received careful consideration in *State ex rel. Washington Toll Bridge Authority v. Yelle, supra,* an *En Banc* decision wherein the authorities bearing on the subject were cited and analyzed. That case arose out of chapter 173, p. 654, Laws of 1937 (Rem. Rev. Stat., Vol. 7A, § 6524-1 [P.P.C. § 632-1] *et seq.*), commonly known as the Washington Toll Bridge Authority act. Section 14 of that act (Rem. Rev. Stat., Vol. 7A, § 6524-14) provides in part:

"The proceeds from the sale of all bonds authorized under the provisions of this act shall be paid to the state treasurer for the credit of the Washington Toll Bridge Authority and be deposited as demand deposits forthwith in such depositary or depositaries as may be authorized by law to receive deposits of state funds to the credit of a fund to be designated as the construction fund of the particular toll bridge or toll bridges for which such bonds were issued and sold, which fund shall not be a state fund and shall at all times be kept segregated and set apart from all other funds and in trust for the purposes herein set out. . . .

*"All tolls or other revenues received from the operation of any toll bridge or toll bridges* constructed with the proceeds of bonds issued and sold hereunder *shall be paid* over by the director of highways *to the state treasurer who shall deposit the same forthwith* as demand deposits *in such depositary or depositaries as may be authorized by law to receive deposits of state funds to the credit of a special trust fund* to be designated as the toll revenue fund of the particular toll bridge or toll bridges producing such tolls or revenue, which fund shall be a trust fund and shall at all times be kept segregated and set apart from all other funds." (Italics ours.)

Upon the question whether tolls obtained from the operation of a toll bridge (referred to in the second paragraph of § 14 above quoted) were funds within the purview of the

constitutional provision, this court said in the *Washington Toll Bridge Authority* case:

"Since these funds are payable to the state treasurer under § 14 of the act, it is necessary to determine whether any disbursements may be made of such funds in the absence of an appropriation therefor.

"In the final analysis, the test of whether the state treasurer, under this act, is acting as such, or merely as a convenient, qualified, and suitable official to serve as the custodian of the funds of an administrative body, namely, the toll bridge authority, is whether its funds are required by the constitution to be placed with the state treasurer. The mere fact the state treasurer is called upon to render certain services with respect to these funds in no wise makes the moneys so received by him state funds in the state treasury.

"Viewing the act as a whole, and bearing in mind that the great bulk of the revenues of the toll bridge authority are not taxes, that the funds deposited with the treasury were expressly declared not to be state funds, that the funds were to be credited to the toll bridge authority and segregated from all other funds and not to be paid into the state treasury, we think the legislature could have provided that the funds of the toll bridge authority be paid into a revolving fund as in the Washington state liquor act, *supra* [Chapter 62, Laws of 1933, Ex. Ses., p. 173, Rem. Rev. Stat. (Sup.), § 7306-1], or placed in the custody of some other competent and qualified state official, and therefore the funds of the toll bridge authority under this act may be expended as directed by the legislature without a specific appropriation."

The opinion then cited the *Pape* case, *supra,* as sustaining authority, saying:

"*State ex rel. Sherman v. Pape*, 103 Wash. 319, 174 Pac. 468, involved an application for a writ of mandate to compel the state forester and fire warden to pay certain moneys into the state treasury collected from property owners pursuant to certain contracts for protection of their property from fire. Relator [the state treasurer] argued that it was the manifest intention of the constitutional provision that all moneys collected by the state for any purpose are required to be paid into the state treasury and can only be disbursed in pursuance of an appropriation by the legislature, although moneys collected under some particular

statute may not be what could technically be called funds belonging to the state. It was held that no appropriation was necessary, and that relator was not entitled to have the funds paid into the state treasury."

Respondent herein, the present state auditor, in support of his contention opposing the relator, cites *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5, and *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751. Both of those cases were referred to in the *Washington Toll Bridge Authority* case, *supra,* and were distinguished from that case in the following language:

"Respondent [state auditor] cites *State ex rel. Shuff v. Clausen,* 131 Wash. 119, 229 Pac. 5, to support his contention that an appropriation is a necessary condition precedent to the expenditure of the funds of the toll bridge authority. That case is distinguishable from the present case, because it involved contributions under the workmen's compensation act, which were required to be paid into the state treasury by virtue of a positive command of the legislature, embodied in Rem. Rev. Stat., § 7676 [P. C. § 3471].

"Respondent also relies upon *State ex rel. Davis v. Clausen,* 160 Wash. 618, 295 Pac. 751, in which we held that certain funds of the state college of Washington, although in the nature of special funds, nevertheless were funds of the state and could not be disbursed by the state treasurer except pursuant to an appropriation. That case is distinguishable from the case at bar, in that a state institution was involved in that case; there was no statutory provision expressly providing the funds in question were not state funds; and in neither that case nor in *State ex rel. Shuff v. Clausen, supra,* did this court have before it for decision the question whether all funds held by the state treasurer were subject to appropriation or whether, when the state treasurer was merely acting as custodian of funds of an administrative body, such funds became subject to the constitutional provision requiring an appropriation."

The *Shuff* and *Davis* cases, *supra,* are likewise distinguishable from the case at bar upon virtually the same grounds as those stated in the foregoing quotation.

Proceeding to its conclusion, the court in the *Washington Toll Bridge Authority* case, *supra,* said:

"We conclude that chapter 173, *supra*, does not contemplate the payment of the funds involved into the state treasury or into the hands of the state treasurer *as such,* but only to the state treasurer *as special custodian* for the toll bridge authority, and hence no appropriation is required for the disbursement of these funds under Article VIII, § 4, as amended by Amendment 11." (Italics ours.)

Respondent herein also cites and relies upon the case of *Mason-Walsh-Atkinson-Kier Co. v. Department of Labor & Industries,* 5 Wn. (2d) 508, 105 P. (2d) 832. That case, however, is distinguishable upon the same ground as the *Shuff* case, *supra,* was distinguished in the *Washington Toll Bridge Authority* case, *supra.* The *Mason-Walsh-Atkinson-Kier* case involved the accident fund set up under the workmen's compensation act, and we specifically stated in the opinion therein that the accident fund is "in no sense a private fund," but a public fund, that such fund "constitutes moneys *in the treasury of the state,*" and that therefore, under the holding of the *Shuff* case, *supra,* no disbursement could be made from that fund without a legislative appropriation.

It is true that the retirement system act, with which we are now particularly concerned, does not expressly declare that the fund which is here involved shall not be a state fund or that it shall be kept segregated and set apart from all other funds and held in trust for specified purposes, as was declared in the Washington Toll Bridge Authority act, and as was subsequently pointed out in the *Washington Toll Bridge Authority* case, *supra.*

However, the retirement act refers to the funds in the custody of the state treasurer as "belonging to the Retirement System." Furthermore, it provides that the members of the retirement board shall be trustees of the several funds created by the act; that the contributions from the members shall be paid to the state treasurer "for use according to the provisions of this act"; that the members of the board shall maintain an individual account with each member of the system, showing the amount of the member's contributions, together with interest accumulations;

that, if a member should withdraw from service before becoming eligible for retirement, he is to be paid, on demand, the contributions standing to his credit in the employees' savings fund, with regular interest additions; and that all disbursements from the funds of the retirement system *shall be paid* by the state auditor upon vouchers duly authorized by the retirement board. We are of the opinion that, in the absence of evidence establishing a contrary intention on the part of the legislature, the factors which we have just recited are sufficient to support a finding that the funds here in question are not *state funds*.

Since, as hereinbefore determined, the legislature had the power to provide for the creation, collection, and administration of special funds for special purposes, without making them state or public funds, the situation resolves itself into the question whether the legislature, in passing the retirement system act, intended to create a *state fund subject to the constitutional restriction*, or whether, on the contrary, it intended simply to set up a *special, proprietary fund to be expended as directed by the legislature, without a specific appropriation*.

◼ The legislative intent is of course to be determined from reading the act itself, construing the terms and provisions therein according to their ordinary meaning, and giving consideration to the purposes and objects sought to be accomplished by the legislative enactment.

◼ When the act is read as a whole and due consideration is given to each and every section thereof in their relation to each other, we think it becomes clear that it was the legislative intent that the funds here in question should not constitute a state or public fund, but rather a special fund, of a proprietary nature, to be at all times readily available for disbursement as provided by the act, without the necessity of a biennial appropriation therefor.

The factors which induce this conclusion, as they are expressed or indicated in the act itself, may be summarized as follows: (a) The act obviously contemplates the establishment of a retirement system for the benefit of state and

municipal employees, approximating in principle a plan of insurance, to be administered with as little governmental restriction as possible, consistent with the expeditious accomplishment of its objectives; (b) the members of the retirement board are vested with the authority and charged with the responsibility of making the provisions of the act effective; (c) the members of the board are made trustees of the funds created by the act, with full power to invest such funds in certain types of bonds and in appropriate contracts of life insurance or annuity; (d) the retirement board is required to keep on deposit *in the state treasury* only such amount as does not exceed ten per cent of the total amount of the funds provided by the act, for the purpose of meeting disbursements for annuities and other payments in excess of the receipts; (e) the state treasurer, who is a member of the retirement board, is designated by the act as *custodian* of the funds belonging to the administrative body; (f) the state treasurer is not required to deposit, in the manner required for the deposit of state funds, any portion of the funds of the retirement system *needed for immediate use*; (g) the state treasurer is required to furnish to the retirement board an annual "statement of the amount of the funds in his custody belonging to the Retirement System," copies of which shall be available to the members of the system; (h) the moneys in the employees' savings fund, with which we are here primarily concerned, are not derived from taxes, which, under Art. VII, § 6, of the constitution, must be paid into the state treasury, but are contributions of the employees themselves, deducted from their earnable compensation; (i) the members' deductions, or contributions, must be transmitted to the retirement board, and by it paid to the state treasurer "for use according to the provisions of this act"; (j) the board must make refund of such contributions, upon written request, to any member who ceases to be an employee before becoming eligible to retirement benefits; (k) if a member dies before his service retirement becomes effective, the amount of his contributions shall be paid to certain persons

nominated by the member in writing, or else to his legal representatives, thus indicating the proprietary interest of the member in the fund in which such contributions are placed; (l) the board may not withhold payment of such refund for more than six months after a member has ceased to be an employee; (m) the funds of the retirement system shall be disbursed by the state auditor *upon vouchers duly authorized by the retirement board*; (n) any member withdrawing his contributions from the employees' savings fund is entitled to interest thereon; (o) the legislature made an appropriation of one hundred thousand dollars to the expense fund, for costs of *administering the act*, but made no appropriation for any of the other funds created by the act, thus evidencing the deliberate intention of the legislature not to make any appropriation to those other funds because the legislative body was of the view that such funds were capable of disbursement without further legislative appropriation.

■ Having concluded that a legislative appropriation is not required in cases which involve the refund of contributions made to the employees' savings fund, we are satisfied that the relator is entitled to the relief sought in its original petition. It is, therefore, hereby ordered that a writ issue herein directing the respondent state auditor to honor the claimant's voucher and draw a warrant pursuant thereto. It is further ordered that the Departmental opinion herein be overruled in so far as the ground upon which it rests is concerned.

ALL CONCUR.